## GEORGE T. GAMBRILL *vs.* JOHN W. SCHOOLEY.

*Plea in Abutment to the Jurisdiction on Account of Non-Residence of Defendant—Burden of Proof—Questions for the Jury—Carrying on Business in a County—Slander—Admissibility of Evidence—Special Damage—Competency of Evidence to Prove Express Malice—Words Actionable per se—Comparison of Handwriting—Evidence of Provocation in Action of Slander—Punitive Damages—Instructions to the Jury.*

A defendant who had been served with process in W. County pleaded in abatement that he was not a resident of that county and did not carry on any regular business or engage in any employment therein. Under Code, Art. 75. sec. 132, a person who resides in one county, but carries on any regular business or habitually engages in any employment in another county, may be sued in either county. *Held,* that the burden of proof is upon the defendant to sustain the allegations of his plea, since the presumption is that the Court had jurisdiction, and the defendant, being required to allege want of jurisdiction, must prove the facts alleged.

Where a defendant pleaded that the Court was without jurisdiction of the suit, because he was a non-resident of the county in which the action was instituted, and the judgment being against him on the plea, the case proceeds to trial, then on appeal from the final judgment, the rulings of the Court on the plea to the jurisdiction, as well as during the trial, are open for review.

A suit was instituted against the defendant in Washington County on November 18th, 1898, to which he pleaded in abatement that he was not a resident of that county and did not carry on any regular business therein. Under Code, Art. 75, sec. 132, a defendant may be sued in any county where he carries on any regular business, although not resident therein. The evidence on the trial of the plea showed that the defendant resided

in Baltimore City, but had owned and operated a distillery in Washington County. In January, 1898, he made an agreement to sell a certain quantity of whiskey annually to a dealer and not to sell to anybody else for a period of five years, and to manufacture whiskey only as required, and also to give that dealer an option to purchase the distillery. In pursuance of this agreement defendant's distillery was shut down from August 8th, 1898, to January 12th, 1899. Defendant testified that he did not intend to resume the business of distilling until required so to do by said dealer. *Held*,

1st. That it was error to instruct the jury that as matter of law the defendant carried on a regular business in Washington County at the time the suit was brought, but the question should have been submitted to the finding of the jury.

2nd. That the defendant was also entitled to have the jury instructed that in determining whether or not his distillery was so closed in November, 1898, as to preclude his being sued in said county upon the ground that he was then and there operating a distillery, it is proper for them to consider the testimony of the defendant himself as to his intention in reference to the future opening of the distillery.

In an action of slander evidence is not admissible on the part of the plaintiff to show that he had recovered a judgment against the defendant for breach of a contract, or that the defendant had distrained on the goods of the plaintiff as his tenant, or that the defendant had sued him for trespass, because none of these things has any reference to the subject-matter of the words constituting the slander, but are all irrelevant.

In an action of slander for words charging plaintiff with theft, a letter written by the defendant charging plaintiff with fraud and perjury is not admissible for the purpose of proving malice and to aggravate damages, since that letter may be made, and was made, the cause of an independent action of libel.

The plaintiff in slander cannot be cross-examined as to the details of his discharge in bankruptcy more than thirty years previously, since the transaction is too remote in time to be relevant to the issue.

In an action of slander tried in 1901, the defendant cannot be cross-examined as to judgments which had been recovered against him between 1872 and 1875, since these matters have no relation to the words laid in the declaration and are also too remote in point of time.

The plaintiff cannot testify as to suits for malicious prosecution, etc., brought against him by the defendant, unless the record of such suits be produced.

Evidence is admissible of slanderous words similar to those charged in the declaration spoken of plaintiff by defendant in the following year.

A letter from a third person to the plaintiff is not competent evidence in such action, unless it be shown that the defendant was connected with its writing.

When the declaration does not allege any special damage or loss to the plaintiff as a consequence of the words spoken, evidence of any particular injury caused by defendant's words is not admissible.

Letters written by the defendant to the plaintiff, but not published, in which slanderous language similar to that charged in the declaration was used, are admissible to prove malice.

The defendant having denied that certain words were in his handwriting, the plaintiff offered in evidence a letter to him from the defendant in order to enable the jury to compare the disputed writing with the writing of the letter proved to be genuine. The letter expressed the opinions of the defendant upon certain exciting political questions. *Held*, that since this letter might tend to injure the defendant with such members of the jury as did not share the political views he expressed, it was error to admit it in evidence for the purpose of comparison in handwriting, when other letters equally available for that purpose were at plaintiff's command and already in evidence.

When plaintiff's evidence is that the defendant uttered the slanderous words while standing at a certain place and was heard by persons then standing at another designated place, evidence is admissible to show the results of experiments actually made to ascertain if the voice of a person could be heard at the distance mentioned.

An original deed conveying certain property is not competent evidence to prove ownership of the land when accompanied only by proof of the signature of the clerk of the Court on the endorsement for record, without any other evidence.

When the defendant said in the presence of witnesses that the plaintiff stole his coal, the words, being actionable *per se*, are presumed to be hurtful to the plaintiff, and he is entitled to recover if the jury find that they were so spoken by the defendant, the plea being only *non cul.*

Plaintiff in an action of slander testified that in an interview between himself and the defendant, prior to the utterance of the slanderous words by defendant, he had used actionable and offensive words to the defendant. The latter testified that he did not hear the words. *Held*, that since the defendant had not been provoked by plaintiff's language, which, not having been published, was not actionable, the plaintiff is not thereby prevented from recovering punitive damages in the discretion of the jury.

An instruction to the jury authorizing them to award exemplary damages as a punishment to the defendant if they find that he spoke the words with express malice or ill will towards the plaintiff, should restrict that discretion by reference to the circumstances of the case.

When the declaration does not allege any special injury to the plaintiff's business as a merchant from the slanderous words, and there is no proof of such injury from the persons in whose presence the slander was .

uttered, the plaintiff is not entitled to recover damages for an alleged injury to his credit as a merchant.

In an action of slander the jury should be instructed not to take into consideration the proceedings instituted by the defendant to recover possession of his land from the plaintiff, or proceedings for the collection of debts due by the plaintiff to the defendant, the said proceedings not having been conducted in an unlawful manner.

When the words charged in a declaration for slander are actionable *per se*, the law implies that they were spoken maliciously, but the plaintiff is entitled to show, for the purpose of recovering punitive damages, that there was express malice on the part of the defendant. The difference between implied malice and express malice is a difference in kind rather than in degree. Consequently letters written by the defendant are admissible to prove express malice, although under the pleadings implied malice is admitted.

Appeal from the Superior Court of Baltimore City, (DOBLER, J.) The issue raised on the plea to the jurisdiction was tried before HARLAN, C. J.

In the first count of the declaration the actionable words were alleged to be that "he (meaning the plaintiff) stole my coal." The second and third counts were abandoned at the trial. The plaintiff obtained a judgment on verdict for $1,000.

Upon the trial of the plea to the jurisdiction :

*Defendant's 1st Prayer.*—The verdict of the jury should be for the defendant on the issues submitted unless they find that on November 18th, 1898, the defendant resided in Washington County or was at that time carrying on in said county a regular business or was then and there engaged habitually in some avocation or employment. (*Refused.*)

*Defendant's 5th Prayer.*—That in determining whether or not the distillery of the defendant in Washington County was so closed on November 18th, 1898, (if they find that the same was then closed) as to preclude his being sued in said county upon the ground that he was then and there operating a distillery, it is proper for the jury to consider the testimony of the defendant himself as to his intention in reference to the future conduct or opening of said distillery. (*Refused.*)

*Defendant's 6th Prayer.*—The Court instructs the jury that if they find from the evidence that on the 8th of August,

1898, the defendant closed his distillery located near Roxbury, Washington County, and that at the time he so closed the same he had no intention to resume the operation thereof, except in the contingency that the parties to whom he had sold the whiskey therein and to whom he had agreed to sell the distillery itself, according to the terms of the written contract offered in evidence by the plaintiff, and that the distillery remained closed until on or about the 12th day of January, 1899, and that when this suit was instituted, to wit, on the 18th of November, 1898, the defendant was not actually engaged in the business of distilling whiskey in Washington County, then the defendant was not liable to be sued in said county by reason of his said business of distilling, even although the jury may further find that subsequent to said closing down of said distillery on August 8th, 1898, and before the institution of this suit, some of the whiskey distilled by the defendant prior to said August 8th, 1898, was bottled by workmen in the service of the defendant for the parties to whom he had sold the same in January, 1898. (*Refused.*)

Upon the trial on the merits :

*Plaintiff's 1st Prayer.* That if the jury find that the defendant at the county of Washington, on the 24th day of July, 1898, in the presence and hearing of Alonzo Brown and Kate Brown, spoke of and concerning the plaintiff the words charged in the first count of the declaration, then their verdict must be in favor of the plaintiff. (*Granted.*)

*Plaintiff's Second Prayer.* If the jury find for the plaintiff, they may award him such sum as under all the facts and circumstances of the case they may deem to be fair and just compensation to the plaintiff for the injury which they may find he sustained, occasioned by the words so spoken ; and they may also, in their discretion, award exemplary or punitive damages as a punishment to the defendant, if they find that the words so spoken by the defendant, proceeded from the express malice or ill-will to the plaintiff. (*Granted.*)

*Defendant's 5th Prayer.* That the plaintiff has offered no evidence legally sufficient to show that he sustained any in-

jury to his credit and reputation as a merchant by the speaking and publication of the words set out in the first count of the declaration and that the plaintiff cannot recover for such alleged injury to his credit and reputation as a merchant. (*Refused.*)

*Defendant's 14th Prayer.* The plaintiff having himself testified that, at the meeting between himself and the defendant on the highway on the 16th of July, 1898, a few days prior to the alleged speaking of the words set out in the first count of the declaration, he used towards the plaintiff the foul, abusive, exasperating and slanderous language mentioned by him, and that on the 24th of July, 1898, on the very day on which the language set out in the first count of the declaration is alleged to have been spoken by the defendant of and concerning the plaintiff, the plaintiff used towards the defendant the foul, abusive and slanderous language mentioned by him, the jury are instructed, that if they shall find from the preponderance of the evidence that the defendant on the said 24th day of July, 1898, did, in fact, speak of and concerning the plaintiff the words set out in the first count of the declaration, they cannot award to the plaintiff in this action any exemplary or punitive damages. (*Rejected.*)

*Defendant's 15th Prayer.* That the plaintiff has offered no evidence legally sufficient to show that the defendant was guilty of any invasion of any legal rights of the plaintiff in any legal proceedings shown by the evidence to have been taken by the defendant against the plaintiff for the purpose of recovering possession of his property at Roxbury Station, and that, therefore, under the pleadings, such proceedings cannot be taken into consideration, by the jury for any purpose whatsoever in this action. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John Prentiss Poe* and *George Whitelock,* for the appellant. *As to the Burden of Proof.* Defendants in Maryland may

only be sued in the county of their residence or in which they carry on regular business or habitually engage in some avocation or employment. Code, Art. 75, sec. 132. It would seem to follow from this statutory provision that when a plaintiff institutes a suit against a defendant, he ought to be prepared to prove that his suit is brought in the proper Court whenever the liability of the defendant to be sued in that Court is denied. The defendant ought not to be required to disprove his alleged residence and liability to be sued in such Court, but the plaintiff ought to be required to prove the jurisdiction of the Court as well as the liability of the defendant on the merits. The jurisdiction of the Court to hear the case is as essential a part of the plaintiff's case as the sufficiency of his cause of action, and we respectfully maintain, therefore, that the ruling of the Court as set out in this first exception was erroneous, and that the judgment ought to be reversed for such error.

*As to the Rulings of the Court on the Prayers upon the Plea to the Jurisdiction.* The Court, we maintain, had no authority to pass upon the weight of the testimony or to instruct the jury that upon the uncontradicted testimony of the defendant he was liable to suit in Washington County as a person carrying on a regular business there or habitually engaged in an avocation or employment there. These facts should have been left to the jury to be determined upon the weight of the testimony. *Thomas* v. *Warner*, 83 Md. 20; *Tyler* v. *Murray*, 57 Md. 442. The instructions granted disregarded the evidence of future intention so necessarily connected with this subject, when it is borne in mind that the distillery was actually closed at the time at which the suit was instituted. *Watson* v. *Calvert Bldg. Asso.*, 91 Md. 35; *Corbett* v. *Wolford* 84 Md. 429; *Tyler* v. *Murray*, 57 Md. 446.

The seventh exception was taken to the ruling of the Court in admitting a letter written by the defendant to the plaintiff on February 8th, 1899. This letter is the basis of an action for libel still pending between the plaintiff and defendant. (*Gambrill* v. *Schooley*, 93 Md. 48.) It was written long after

the alleged speaking of the actionable words sued on in the case now before the Court in reply to a letter received by the defendant from the plaintiff.   It had nothing whatsoever to do with the alleged slander of the 24th of July, 1898, and its introduction was calculated to prejudice the jury in this case. It should therefore have been rejected.   *Odgers on Slander,* 314–315 (3rd ed.); 2 *Starkie on Slander,* 53–55 star.

The Court ruled that for the purpose of proving the malice of the defendant toward the plaintiff in the speaking of the words sued on, four letters written by the defendant in his own handwriting to the plaintiff and dated April 19th, April 23rd, June 2nd and September 20th, 1898, were admissible, although it was conceded that the defendant had never published them or exhibited them to any third party.   While other actionable words published by the defendant at or about the time of the speaking of the words sued on similar in tenor to such words, have been allowed to be shown in slander cases to prove defendant's malice, and while other libels published by the defendant at or about the time of the publication of the libel sued on similar in tenor to such libel, have been allowed to be introduced in libel cases to prove the defendant's malice, we have found no case where *unpublished* slanderous words or *unpublished* libels have been received for such purpose.   Publication is the essential fact in all these cases. Without publication the words, however offensive, are not slanderous in law, and not being slanderous can not be admitted for any purpose.   This ruling was, therefore erroneous.

The Court ought not to have allowed the plaintiff to introduce the letter of October 21st, 1896, from the defendant to the plaintiff.   The obvious object of getting it before the jury was to prejudice the defendant by its allusions to Mr. McKinley.   It has not the slightest relevancy to any of the points or questions at issue.   The *pretended* purpose of its introduction was to enable the jury to compare it with the words "200 cop" written in pencil on the margin of a printed circular; offered in evidence, which words the defendant testified he did not write, so as to excuse the contention that his statement in

this particular was not true.   The *real* purpose was to get before the jury a private expression of the defendant's views written in October, 1896, about the candidacy of Mr. McKinley.  The avowed object and the actual object were plainly not the same, and this is so manifest that we respectfully submit that such an indirect and uncandid method of working in irrelevant and improper testimony ought not to be tolerated.

. The Court should have rejected the plaintiff's second prayer, and granted our fourteenth prayer.   Exemplary or punitive damages are allowed, as the terms imply, by way of example or punishment, or both.   The doctrine presupposes that the plaintiff in asking such damages is without fault—that he comes into Court with clean hands—that he shows himself an innocent and injured party, asking compensation for an actionable wrong hurtful to his reputation, he himself being free from blame.   But when upon his own testimony the plaintiff shows himself to be full of rancor and malice towards the defendant, confesses the use towards the defendant of the most foul and offensive language, the utmost that under the circumstances he can properly ask is such damages as compensate him for the actual injury sustained by reason of the slander complained of, but not one cent more—the pound of flesh, but not one drop of blood.   But it will be carrying the doctrine of vindictive, exemplary or punitive damages to a greater length than we find it to have ever been carried' before, in any case examined by us, to allow a plaintiff, under circumstances such as are disclosed in this record, to recover, in addition to *compensation*, damages by way of *punishment* to the defendant, and *example* to other wrongdoers. *Davis* v. *Griffith*, 4 G. & J. 343; *Fawsett* v. *Clark*, 48 Md. 495; *Newell on Defamation*, 902; *Watson on Damages for Personal Injuries*, 880.

There are numerous cases, embracing the various kinds of actions for personal injuries, holding that where a provocation for the wrong complained of co-exists therewith, *e. g.*, abusive language or annoying conduct, then damages recoverable in such cases must be confined to compensatory dam-

ages, and vindictive damages can not be allowed.  2 *Green-leaf, Evidence*, sec. 267; *Robinson* v. *Rupert*, 23 Penna. 523 (assault); *Grotton* v. *Glidden*, 84 Me. 589, 591 (assault); *Adams* v. *Waggoner*, 33 Ind. 531 (assault); *Shay* v. *Thompson*, 59 Wis. 540–2 (assault); *Morely* v. *Dunbar*, 24 Wis. 183, 188 (assault); *Kiff* v. *Youmans*, 86 N. Y. 324, 331 (assault); *Wilson* v. *Young*, 31 Wis. 574, 583 (assault); *Crosby* v. *Humphreys*, 59 Minn. 93 (assault); *Ward* v. *Blackwood*, 41 Ark. 295, 300 (assault); *Cushman* v. *Waddell*, 1 Baldwin U. S. 57, 59 (assault); *Balto. & O. R. R.* v. *Barger*, 80 Md. 34 (assault); *Palmer* v. *Andrews*, 7 Wendell, 142.

*Alex. R. Hagner* (with whom was *H. C. Gaither* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action on the case for slander, brought by the appellee against the appellant in the Circuit Court for Washington County.  Upon the filing of the declaration in that Court, the defendant filed a plea to the jurisdiction alleging that at the time of the institution of said suit he was a resident of Baltimore City, and was not, at that time, a resident of Washington County, and did not then carry on any regular business, or habitually engage in any avocation or employment therein.  After the filing of this plea, the case was removed, on the suggestion of the defendant, to Garrett County, and was again removed, on suggestion of the plaintiff, to Baltimore City.  After the record reached the Superior Court of Baltimore City, replication was filed to that plea, traversing its allegations, and issue was joined on this pleading.  A jury was sworn to try this issue, and the trial resulted in a verdict for the plaintiff, upon which there was entered a judgment of *respondeat ouster*.

At the trial of that issue two exceptions were taken by the defendant to the rulings of the Court, the first being to the ruling that the burden of proof was upon the defendant to sustain his plea to the jurisdiction ; and the second to the grant-

ing of the plaintiff's two prayers and the rejection of the defendant's six prayers.

After the entry of the judgment of *respondeat ouster*, the defendant filed the general issue plea, and the trial upon the merits proceeded before a second jury at a later term of the Court. During the trial of this issue nineteen exceptions were taken by the defendant to rulings upon evidence and one to the ruling upon the prayers, of which the plaintiff offered two, both of which were granted, and the defendant offered nineteen, of which twelve were granted and seven were rejected.

Under the decision in *Tyler* v. *Murray*, 57 Md. 445, the verdict and final judgment being against the defendant, the rulings of the Court in either trial before the jury are open for review.

We shall consider first the exceptions in the trial in which the question of jurisdiction was decided.

Upon the ruling in the first exception, that the defendant must first offer testimony in support of his plea to the jurisdiction, no authority was produced on either side ; the plaintiff's counsel contending that the plea clearly sets up affirmative matter, and that the replication thereto is mere negation, while defendant's counsel contends that as jurisdiction to hear the plaintiff's case is as essential to recovery as the sufficiency of his cause of action, the plaintiff ought to be required to prove the one as well as the other. Upon first view it might seem that the position of the defendant is supported by sound reason but careful consideration leads us to a different conclusion. It must be borne in mind that where one has been duly served with process from a Court of general jurisdiction, if he appears generally he waives any personal privilege he may have to object to the jurisdiction of that Court and that if he intends to claim such privilege he must do so either by motion of *non pros* or by plea, in which he must allege such facts as, under the statute governing the case, are necessary to establish his privilege. In such case he comes within the rule laid down in 1 *Jones on Evidence*, sec. 178, that where a claim or defense rests upon a negative allegation, the one asserting

such claim or defense is not relieved of the *onus probandi* by reason of the form of the allegation, or the inconvenience of proving a negative ; or, as stated in *Stephen's Digest of the Law of Evidence,* Art. 93, "Whoever desires any Court to give judgment as to any legal right or liability dependent on the existence or non-existence of any facts which he asserts, or denies, to exist, must prove that those facts do, or do not, exist." Mr. Reynolds, in his excellent work on *Evidence,* sec. 73, says : "The best tests for ascertaining on whom the burden of proof lies, are, first, to consider who would succeed if no evidence were given on either side ; and secondly, to examine what would be the effect of striking out of the record the allegation to be proved, bearing in mind that the *onus* must lie on whichever party would fail if either of these steps were pursued."

The only thing in issue under the plea in question is the liability of the defendant to answer in *that Court.* Upon that point it may be said there is a *quasi* presumption of the validity of the process of Courts of general jurisdiction. If in this case no evidence had been given *upon that issue* on either side, the maxim *Omnia presumuntur rite esse acta* would have applied to the process by which the defendant was brought into Court ; or if the allegations of the plea necessary to be proved under Art. 75, sec. 132 of the Code to show why defendant was not subject to the jurisdiction of the Court were stricken out of the record, the plea would be a mere nullity and *that* issue would be eliminated from the case. The plaintiff was not required to *allege jurisdiction*, but defendant was required to *allege want of jurisdiction*, and the burden of proof, except in rare instances, goes with the duty of averment. For these reasons we think this ruling of the Court was correct.

The reference which we have already made to the case of *Tyler* v. *Murray, supra,* is sufficient to show that no independent appeal was necessary from the judgment of *respondeat ouster*, and that all errors in rulings in either trial before the jury are open upon the appeal from the final judgment. After

this ruling upon the burden of proof, the defendant himself testified that he had resided and voted continuously in Balti- more City since August, 1882, being engaged in business there as a grain dealer since 1884. That about 1883 he bought a farm in Washington County, which he stocked and carried on through a foreman who lived on the farm. That he sold the farm November 15th, 1898, three days be- fore this suit was instituted. That he owned the Roxbury distillery in Washington County, and carried on that business there until January 27th, 1898, when he entered into the agreement with Steinhardt Bros. & Co., offered in evidence and transcribed in full as follows :

"Articles of agreement made and entered into this twenty- seventh day of January, in the year one thousand eight hun- dred and ninety-eight, by and between George T. Gambrill, of the city of Baltimore, in the State of Maryland, party of the first part, and Lewis Steinhardt, Morris Steinhardt, Henry Steinhardt, David J. Steinhardt, Edward Strasser, William W. Strasser and Joseph A. Strauser, all of the city of New York, and composing the firm or partnership of Steinhardt Brothers & Co., of the City, County and State of New York, parties of the second part:

"Whereas the party of the first part is a distiller of whiskey, owning and controlling a certain distillery known as the Rox- bury Distillery, together with the buildings, lands and appurte- nances situate in the township of Roxbury, Washington County, Maryland, together with a stock of certain rye whiskey known on the market as Roxbury rye whiskey, and the trade-mark and good will of said business ; and has also on hand a cer- tain quantity of the said Roxbury rye whiskey ; and

"Whereas the parties of the second part hereby agree to and with the party of the first part, that for and in considera- tion of the premises, and of the performance of the mutual covenants and agreements hereinafter mentioned, they, the said parties of the second part, shall be the exclusive handlers in the first instance of said Roxbury rye whiskey, and under certain conditions shall at the option of them, the parties of

the second part, acquire the said lands, distillery, buildings, and appurtenances, together with the brands, trade-mark and good will of said business of distilling the rye whiskey, now owned and controlled by the party of the first part as aforesaid ;

" Now, therefore, for and in consideration of the premises and of the mutual covenants and agreements hereinafter contained to be done, kept and performed by the respective parties hereto, and for and in further consideration of the sum of one dollar, lawful money of the United States of America by each of said parties hereto to the other in hand paid, the receipt whereof is hereby acknowledged, the said several parties hereto have agreed, and hereby do agree to and with each other as follows :

"*First.* The parties of the second part hereby agree to purchase from the party of the first part, and the latter agrees· to sell and deliver to the former, during a period of five years from date hereof, at the rate of six hundred (600) barrels of said whiskey per annum, and making a total of three thousand (3,000) barrels of the said Roxbury rye whiskey, upon the terms and conditions hereinafter mentioned.

"*Second.* The party of the first part hereby agrees and binds; himself, that he will at the option of the parties of the second part, sell and deliver to them, at any time within five years; from the date of this agreement, the entire stock of Roxbury rye whiskey, which is described by serial numbers, statement of age, price and other particulars in the schedule thereof hereto annexed, and which schedule signed by the parties hereto forms part and parcel of this agreement ; and the parties of the second part shall have the right to take such part or parts of said whiskies set forth in said schedule hereto annexed, and at such times within the said period of five years as they, the parties of the second part, shall determine and require ; and the party of the first part, for himself and his legal representatives, hereby binds himself not to sell or deliver any of the said Roxbury rye whiskey described and mentioned in the said annexed schedule to any person, firm or corporation other

than the parties of the second part during said period of five years as aforesaid, without the written consent of the parties of the second part thereto first obtained ; it being understood, that no oral consent of the parties of the second part shall be valid or binding as to a waiver of the said option herein and hereby granted to the parties of the second part."

He also testified that since the date of that agreement he had not sold an ounce of whiskey to any one but Steinhardt Bros. & Co., and that the agreement to sell to them included all he was to make for five years ; that the distillery was closed down from August 8th, 1898, to January 12th, 1899, at the instance of Steinhardt Bros. & Co., and that on November 5th, 1898, he was not engaged in distilling or in any other business in Washington County ; that his agreement with Steinhardt Bros. & Co. required him to make whatever whiskey they needed, and that this was his whole whiskey business there. He was asked, *without objection*, what was his intention as to resumption, and he answered, *also without objection*, "my intent was to leave that to them ; if they said start the distillery, which they had a right to do, I would have done it, and that is where I stand today." He also testified that about November 22nd, 1898, after the sale of the farm, he leased the farm orchard from the purchaser, for a nephew, though the lease was made in his own name.

Mr. Miller, a revenue officer in charge of that district, also testified for defendant that the distillery was closed during the period already stated, but that he did not know why it was so closed. The testimony offered by the plaintiff on the plea in abatement was wholly unimportant.

At the close of the whole testimony on this branch of the case, the Court instructed the jury first, that by the uncontradicted testimony of the defendant, it appeared that at the time of the institution of this suit, the defendant was a person who carried on a regular business in Washington County, and that under the issues joined their verdict must be for the plaintiff ; and second, in similar language, that defendant was a person habitually engaged in an avocation or employment in Wash-

ington County, and that under the issues joined their verdict must be for the plaintiff.

It is difficult to perceive how the Court could, *as matter of law*, declare that from the uncontradicted testimony of defendant he was carrying on a regular business, or was habitually engaged in an avocation or employment in Washington County, unless in determining the construction of the agreement offered in evidence, it found that the terms of this agreement necessarily imposed upon the defendant the duty of conducting a regular business as a distiller for five years from its date, and unless the Court also disregarded all defendant's testimony, admitted without objection, to the effect that he was not so engaged and as to his intention not to resume upon the principle that if the legal effect of the agreement was to make him a regular distiller, his testimony that he was not so engaged, and as to his future intention, could have no effect as against this agreement. We must presume that this was the view of the Court, but we are not able to concur in this view. The only obligation actually imposed upon the defendant was to sell and deliver to Steinhardt Bros. & Co. 600 barrels of whiskey per year, and there is nothing to show that he could not comply with this obligation from time to time, by sales from the stock on hand, unless Steinhardt Bros. in the meantime exercised their option to purchase the entire stock in bulk. In that event his obligation would have been to resume distilling in order to comply with his contract. But that was *a future contingency, not a present existing situation*, and during the suspension of business thus brought about he was in the same situation, for the purposes of this exception, as if he had sold or leased his distillery. Steinhardt Bros. & Co. had the exclusive right to handle his whiskey for five years, and it is difficult to conceive why he should continue to manufacture whiskey, unless necessary to fulfil his contract with them, since he could not sell a barrel to any one but them, and could only require them to take 600 barrels per year. We are therefore of opinion that the Court was not warranted in finding as matter of law that defendant was carrying on a regular business or was

habitually engaged in an avocation in Washington County, and to direct a verdict for plaintiff on those issues. The plaintiff's first and second prayers were therefore improperly granted. There was not a particle of evidence to show that the defendant was a resident of Washington County, and plaintiff asked no instruction as to this. There being no such evidence, defendant's second prayer which was confined to residence should have been granted. The testimony tending to show that he carried on a regular business or was habitually engaged in an avocation in Washington county was certainly meagre, but we are not prepared to say it is so inconclusive as to preclude its submission to the jury. Defendants first prayer would have been correct if it had not also submitted the question of residence, but as it embraced that, it was properly refused. His third prayer which was confined to the business of farming and fruit raising should have been granted as there was not a particle of evidence legally sufficient to sustain that finding. His fourth prayer could not have been properly granted, because as we have said, there was no evidence legally sufficient to show residence in Washington County and it was therefore immaterial what constituted residence. His fifth prayer asserts that in determining whether he was then engaged in the avocation of distilling, the jury should consider his testimony in reference to his intention to resume distilling. In *Fenwick's case*, 63 Md. 239, it was held that one on trial for an assault with an intent to murder may testify for what purpose he procured the instrument with which the assault was committed, and the Court said: "It is certain that no other person could swear positively, in regard to the particular intent entertained by the accused on the occasion mentioned, and it is equally certain that the accused could, if truthfully inclined, swear positively to that intent; and as he knew the fact, and the fact was material and pertinent to the issue, his testimony ought not to be excluded." So, in *Roddy* v. *Finnegan*, 43 Md. 501, where the question was as to the intent to violate a city ordinance, the Court said: "The inquiry into the intention of Finnegan relevant to a proper comprehension of the nature and import of this order (to drive on

the pavement.) If he is reliable he can give better testimony than inferential." This is clear and cogent reasoning and is directly applicable to the question before us, and we think this prayer should have been granted.

Defendant's sixth prayer is defective in failing to state what the contingency is which is referred to therein, and without which it is not intelligible. It might be inferred, if inference were permissible to supply the omission, that the contingency meant was a demand by Steinhardt Bros. & Co. to resume distilling in order to enable defendant to comply with his obligation. Upon that hypothesis the proposition thus asserted would be a sound one, but as offered, this prayer was properly rejected.

It results from what we have said that the judgment of *respondeat ouster* must be reversed.

The third, fourth and fifth and sixth exceptions may be considered together. After offering in evidence a written agreement by which defendant agreed to let plaintiff have a dwelling and warehouse at Roxbury rent free for two years, from August 1st, 1892, and to pay him $30 per month, plaintiff was allowed to testify, over defendant's objection, that in April, 1899, during plaintiff's absence from the house, defendant put plaintiff's effects out of the house, and nailed it up. This constitutes the third exception. Plaintiff was further in like manner permitted to testify that he had sued defendant in March, 1898, for salary from July, 1895, up to 1898, and had obtained a verdict on November 19th, 1898, for $443, his claim being for $1,800, though he admitted that previous to bringing this suit he had made no demand or claim for any salary after the two years provided in the agreement. This constitutes the fourth exception. He testified in like manner that in April, 1898, defendant issued two distraints against him and that he replevied the property distrained on. This constitutes the fifth exception. He still further testified in like manner that in 1898 and 1899 defendant sued him as a trespasser and took proceedings to evict him, and this constitutes the sixth exception. The plaintiff

claims that all this evidence was admissible to prove malice in fact and asserts that anything the defendant has ever said or done with reference to him may be urged as evidence of malice, while the defendant contends it relates to collateral and wholly irrelevant facts. The true rule to be applied to the determination of this question is well and concisely stated in *Garrett* v. *Dickerson*, 19 Md, 450, as follows: "Evidence of any other words or acts *having reference to the subject-matter of the actionable words*, may be submitted to the jury for the same purpose, whether such words or acts were spoken and done before or after suit brought." Here all the acts permitted to be shown grew out of the contractual relations of the parties and there is nothing whatever to show that any one of them bore the remotest relation to the subject-matter of the words charged. In the fourth exception the act offered to show malice was the act of the plaintiff in suing defendant for salary, which would seem to be an inversion of the rule, even if otherwise applicable in this case. We think these rulings were all erroneous,

The seventh exception was taken to the admission in evidence of a letter from defendant to plaintiff, dated February 8th, 1899, in which he speaks of acts of fraud and perjury on the part of the plaintiff and by innuendo characterizes him as a thief. This letter thus may be regarded as having reference to the charge of stealing coal, and therefore as coming in that respect within the rule above recognized. Many Courts hold, and it was held in Maryland in *Wagner* v. *Holbruner*, 7 Gill, 296, and in *Negley* v. *Farrow*, 60 Md. 181, that for the purpose of proving malice and to aggravate the damages evidence may be given of other slanderous words of similar import spoken subsequent to those laid in the declaration, and in some jurisdictions this is allowed though such words may be made the basis of recovery in a separate action. 18 *Amer. and Eng. Ency. of Law*, 1010 (2 ed.) Mr. Greenleaf, vol. 2, sec. 418, Lewis ed., while stating that evidence may be given of any language of defendant, whether oral or written, indicative of the temper and disposition with which he made the

publication, and this whether used before or after the publication complained of, says, "but if such collateral evidence consists of matter actionable in itself, the jury must be cautioned not to increase the damages on that account." The letter now in question was published by dictation to a stenographer and is the basis of a pending action in which damages were actually recovered, but on appeal to this Court, the judgment was reversed (93 Md. 48), and the cause remanded for a new trial. The point now under consideration has not been decided in this State, but we cannot regard the cautionary rule laid down by Mr. Greenleaf, as a safe rule in practice since there is no means of enforcing the caution other than by the exercise of the power always possessed by Courts over verdicts by granting a new trial for excessive damages. Moreover the rule does not appear to us to rest upon a satisfactory reason since there is undeniable inconsistency in first admitting such evidence not only to prove malice in fact, but to inflame the implied malice, and in then instructing the jury the damages must not be increased on that account. The sounder rule appears to us to be to limit the admissibility to other words or writings not in themselves actionable, as held in *De Fries* v. *Davis*, 7 C. & P. 112, and in *Bodwell* v. *Swan*, 3 Pick. 376, or to those for which damages have already been recovered as held in *Symmons* v. *Blake*, 1 M. & Rob. 477, and by LORD ABINGER in *Pearce* v. *Ornsby, idem*, 455. But without so deciding we are unwilling to extend the rule to include actionable words constituting the basis of a pending action. For this reason we think it was error to admit the letter in question.

The 8th, 16th and 18th exceptions will be considered together. Plaintiff, while under cross-examination and not in response to any question upon the subject, stated that between 1864 and 1868 he had gone into bankruptcy and had received a discharge. Defendant then sought to inquire into the details of the bankrupt proceedings, but plaintiff objected and the Court sustained the objection on the ground that the transaction was too remote in time. This constitutes the eighth exception, and without pausing for remark we think the ruling and its reason was correct.

Upon cross-examination, defendant was asked whether certain persons named had not recovered judgments against him between 1872 and 1875, and he objected to the question, but the Court overruled the objection, and he answered that he did not know, and added that about that time he was drawn into the affairs of Gambrill Bros., and went into bankruptcy, but within twenty-four months paid off in full every individual creditor, but not the claims against Gambrill Bros. for which he was sought to be made liable. This constitutes the sixteenth exception.

The eighteenth exception was taken to the ruling of the Court in allowing the plaintiff to read to the jury short copies of several judgments rendered against defendant in Washington County between 1872 and 1875. These two rulings are wholly inconsistent with the ruling in the eighth exception, and if that was correct these cannot be, and we have already said the ruling in the eighth exception was correct. Apart from the fact that the matters involved in these three exceptions are purely collateral and have not the slightest connection with the words laid in the declaration, if the inquiry into the plaintiff's bankruptcy in 1868 was too remote, the same legal principle requires that a similar inquiry into defendant's liabilities in 1872 should be held too remote.

The ninth exception is to the ruling of the Court in allowing the plaintiff to testify as to the dates and the details of proceedings in insolvency, distress for rent, and suits for malicious prosecution by defendant against plaintiff without the production of the record. When the purpose is solely to discredit a witness, he may be asked, without production of the record, whether he has not been convicted of a crime. *McLaughlin* v. *Mencke*, 80 Md. 85. But where the object is broadly to get in evidence the facts concluded by the judgment, the record must be produced.

The tenth, eleventh and twelfth exceptions present substantially the same question. In each of these evidence was admitted of slanderous words similar to those charged in the first count of the declaration, spoken of plaintiff by defendant

during the year 1899, in the presence of the witnesses, Suman and the two Clines. These we think come fairly within the rule as to the subject-matter, and are not too remote for admission.

It does not appear from the thirteenth exception that the letter of December 17th, 1898, from John E. Spurrier to the plaintiff which he was asked to identify, was ever offered or admitted in evidence. The letter referred to plaintiff's position as agent at Roxbury station, and the defendant objected to the question being asked or answered. We cannot perceive upon what ground a letter from a third person to plaintiff could be admissible unless some connection of the defendant with its contents were shown, but we cannot say there was error in allowing the question and answer necessary to identify the letter, and proper as preliminary to showing such connection, as when shown, might justify its offer in evidence. It does however appear from another part of the record that without showing such connection the plaintiff read in evidence, subject to exception, various letters between *defendant* and certain officials of the B. & O. R. R. Co. and that together with these, there was read this letter from Spurrier to the plaintiff. Its admission was of course erroneous and was probably unobserved by the Court.

The fourteenth exception is to the admission of Spurrier's testimony that his recollection was that plaintiff was discharged as station master at Roxbury at defendant's suggestion. No such special loss or injury was alleged in the declaration as special damage, and in such case the rule is that no evidence of any such particular loss or injury caused by the defendant's acts or words is admissible. *Dicken* v. *Shepherd*, 22 Md. 415. There was error therefore in this ruling.

In the fifteenth exception the Court ruled that four letters from defendant to plaintiff in 1898, in which slanderous language similar to that charged was used, but which were written by defendant's own hand, and as to which no evidence of publication was given, were admissible to prove and inflame the malice. We have been referred to no decided case in

support of this position, and we have been able to find none, but in 18 *Amer. and Eng. Ency. of Law*, 2nd ed. p. 1010, the uttering of similar words is declared admissible.　It was very earnestly contended that as without publication no words however offensive are slanderous in law it would be an anomaly in law to hold them admissible to show malice or for any other purpose when they could not be made the foundation of a claim for damages.　But as the repetition of offensive words, although unpublished, is certainly indicative of the temper and feeling as well as of the deliberation with which they are uttered, there does not appear to be any substantial reason for refusing to admit evidence of such utterances to prove malice under the general rule to that effect, which appears to have made no discrimination between published and unpublished words.

In the seventeenth exception defendant was shown a copy of a circular issued by the American Protective League, referring among other things to the plaintiff in uncomplimentary terms, and was asked if he had distributed copies of this circular, which he denied.　His attention was then called to the words "200 cop" written on the copy of the circular and he was asked if these words were not in his handwriting, which he also denied.　Thereupon the plaintiff offered in evidence, and the Court admitted over the objection of defendant, a letter written by him to the plaintiff, dated October 21st, 1896 for the purpose of comparing the handwriting thereof with the words "200 cop" on the circular.　That letter was as follows :

"Yours 21st to hand and noted.　Don't buy any more coal expecting me to buy it.　And if your Janus faced candidate is elected we won't need whiskey except in small quantities and it wont pay to heat the warehouses.　We will have four more years of low prices and misery to combat.　Trust corporations and political combines will have such sway if McKinley is elected that you and I will be but little better than serfs.　Yours &c., Geo. T. Gambrill."

It is true that sec. 6 of Art. 35 of the Code permits the comparison of a disputed writing with any writing proved to

the satisfaction of the Court to be genuine, but it cannot be supposed it was designed thereby to deprive the Court of all discretion in determining what character of genuine writing should be used for this purpose, or to permit the introduction before the jury of extraneous matter calculated, if not intended, to prejudice the party against whom it is used. In the present case there were already in evidence several letters written by the defendant which would have gratified the most liberal requirement of the law as to comparison of writings without prejudice to the defendant, and the selection of a letter confined to the subject of exciting political questions in an approaching Presidential election, must have been made with no other purpose than to prejudice the defendant with such members of the jury as might not share the views he expressed, and constitutes a perversion of the machinery of justice which we cannot sanction under the circumstances of this case. If there were no other writing available at the time for the purposes of comparison, we might be forced to accept the situation, but it was error to admit a letter of that character for that purpose when others equally available for the purpose were at the plaintiff's command and already properly in evidence.

The nineteenth and twentieth exceptions relate to the exclusion of evidence offered by the defendant and by Sutton, a civil engineer, who had surveyed the premises where the alleged slanderous words were spoken, that there was no change in the topography or circumstances and that they had experimented with the voice to ascertain if the voice of a person standing where the defendant is said to have stood when the words charged were uttered, and speaking in a loud tone, could be heard by one standing where the plaintiff is said to have stood at that time and also where Brown and wife are said to have stood at the same time. This question was considered in *Richardson* v. *State*, 90 Md. 117, and similar experiments as to the range and accuracy of vision were there held admissible, and that case was cited and relied on in the recent case of *Keyser* v. *State*, *ante* p. 96. We think this evidence should have been received, the defense being that the words were not spoken.

In the twenty-first exception the defendant proposed to offer in evidence for certain purposes of rebuttal the original deed to himself for the Roxbury property and to identify the signature of the Clerk of the Circuit Court to the endorsement on the deed showing that it had been recorded, but the Court refused to allow it to be read, because "the same was not properly proven by the original conveyance." If the defendant had accompanied this offer with the offer to prove the signature of the grantor of the deed and of the officer who took the acknowledgement, together with proper proof of the official character and qualification of such officer, the original would have been admissible for all purposes for which a certified copy would have been admissible, and we do not doubt the trial Judge would have so ruled, but as offered we think the original was properly excluded.

This brings us to the rulings on the prayers, that exception being taken to the granting of plaintiff's first and second prayers, and the rejection of defendant's third, fifth, eleventh, fourteenth, fifteenth, sixteenth and eighteenth, prayers.

The words charged in the first count of the declaration are actionable *per se* and there was proof of publication. There was no such proof however as to the words charged in the second and third counts, and the jury were instructed not to regard these. The law presumes the use of actionable language to be hurtful in some degree, and the plaintiff's first prayer was therefore properly granted. *Blumhart* v. *Rohr*, 70 Md. 337. Indeed we understand from the appellant's brief that this is conceded.

The second prayer of the plaintiff, which was granted, and the fourteenth prayer of the defendant, which was rejected, present conflicting theories as to the allowance in this case of exemplary or punitive damages. That of the plaintiff is based upon principles which were adopted and conforms very nearly to the language which was approved, in *Snyder* v. *Fulton*, 34 Md. 129, and in *Negley* v. *Farrow*, 60 Md. 178. But the appellant's counsel have earnestly and ably argued that the doctrine upon which punitive damages are allowed presupposes

that the plaintiff is free from malice towards defendant, and that he comes into Court blameless in the matter; that therefore when the plaintiff's own testimony shows him to have used towards the defendant actionable language, more abusive and offensive than that imputed to the defendant, he cannot be made the recipient of damages given only by way of example for the public benefit, and that the damages must be limited to compensation for injury sustained.

In support of this position they have cited numerous cases of assault, from other States, to show that when plaintiff has provoked the assault by his own improper conduct, the damages recoverable must be limited to compensation, and they refer also to *Davis* v. *Griffith*, 4 G. & J. 343; *Fawsett* v. *Clark*, 48 Md. 494, and *B. & O. R. Co.* v. *Barger*, 80 Md. 84. In none of these Maryland cases did this question arise, and an examination of those cited from other States shows that in all of those the assault itself resulted from provocation by the plaintiff, so that in order to render the cases analogous in fact, and to bring the present case within the reason of those relied on, it should appear here that the language imputed to the defendant was uttered under the provocation of abusive and slanderous language by the plaintiff. But the testimony of the defendant himself is that he did not hear any such language used, and did not know it had been used at the time of his own alleged slanderous words, and his counsel therefore could not put their contention on the ground of provocation, as they frankly stated they did not do, but avowed their position to be that one who exhibited himself in the light that Mr. Schooley did, is not in a situation to ask that the defendant be punished or made an example of.

Perhaps the nearest approach in any Maryland case to the consideration of the principle here asserted, is found in the opinion of JUDGE LEGRAND in *Boteler* v. *Bell*, 1 Md. 179 and 180, where it was held that the defendant in an action of slander may, in mitigation of damages, give proof that the plaintiff had been vilifying him, and that he was influenced to use the language imputed to him, by the abuse of the plain-

tiff.    Referring to the remark of LORD DENMAN in *Watts* v. *Fraser and Moyes*, 7 C. & P. 369, that the defendant might give in evidence libels by the plaintiff published months before, to show a provocation of his own conduct, but that he would caution the jury not to take them as a set off of one libel against another, JUDGE LEGRAND observed: "There is a vast deal of good sense in this view, and it is clearly promotive of the ends of justice which should be the aim and purpose of all Courts of judicature.    Surely the man who indulges in slanderous language towards another, when he has been provoked to it by a long series of abuse, is less culpable in the eye of the law, and of morals, than he who from a fiendish dislike to his fellow-man, or from a spirit of idle gossip, invents slanders against his neighbors."    But in that case it is seen that the damages thus allowed to be mitigated were exemplary and not compensatory merely.    In *B. & O. R. Co.* v. *Barger*, 80 Md. 23, the cases of *Robinson* v. *Rupert*, 23 Pa. 523 and *Kiff* v. *Youmans*, 86 N. Y. 330, much relied on here, were considered by JUDGE BOYD, who said that these cases decided that recent provocation may mitigate compensatory as well as punitive damages, but this Court did not commit itself to that doctrine, and did not go further than to say that "sufficient provocation will mitigate *exemplary damages* in an action of assault."    To hold in this case that if the jury find the plaintiff used the abusive and slanderous language testified to by himself, on July 16th and 24th, 1898, (but not heard by or known to defendant) though they find defendant uttered the words charged in the first count of the declaration, they cannot award exemplary damages, would be a practical setting off *by the Court* of one slander against another which LORD DENMAN said the jury could not do, or to speak more accurately, since there was no *publication* of plaintiff's language and therefore no slander in law, it would be a weighing by the Court of the comparative malice of plaintiff and defendant and a denial to the jury of the legal right to award damages to the plaintiff by reason of the publication of defendant's malice, when there was no legal wrong done to de-

fendant by plaintiff, by reason of the absence of any publication of his malice. For these reasons we must hold that the fourteenth prayer of defendant was properly refused, and that the theory of plaintiff's second prayer was correct. We think it was defective nevertheless in failing to limit the broad and unqualified discretion given by it to award punitive damages, and in not restricting that discretion by reference to all the circumstances of the case, as was said in *Negley* v. *Farrow, supra,* to be the proper form, and as was pointedly shown in *Barger's case, supra,* where the Court in approving a similar prayer, italicised the words *"as the circumstances in their judgment required."*

Without this qualification, the jury in this case were given a free hand to award punitive damages at their pleasure. With it, their pleasure would have been restrained by their judgment of all the circumstances of the case, and one of the pregnant circumstances bearing upon punitive damages is the temper and feeling displayed by the plaintiff.

Without this qualification we cannot approve this prayer. The defendant's third prayer presents the same question raised by the fifteeenth exception on the motion to strike out certain letters because there was no proof of publication, and for the reasons there stated it should have been granted. The defendant's fifth prayer declares that no evidence legally sufficient evidence had been offered to show that plaintiff had sustained any injury to his credit as a merchant, and that there could be no recovery on that ground. When it is sought to recover special damages they must be pleaded and proved by the plaintiff. 18 *Am. and Eng. Enc. of Law,* 2 ed., 1086. This is said in *Dicken* v. *Shepherd, supra,* to be the settled rule and that the proof of such special damage must be limited to the evidence of persons to whom the slanderous words were spoken. Here there is no averment in the declaration, of any injury to plaintiff's business as a merchant, and there is no proof on that point from Alonzo Brown or his wife who are the only persons in whose presence the words are alleged to have been spoken. This prayer therefore should have been granted.

The defendant's eleventh prayer declares there is no evidence legally sufficient to show that at any time subsequent to March 31st, 1898, defendant owed anything for salary or services to the plaintiff.   We cannot perceive what relevancy the matter of salary has to any issue in this case.   The testimony shows that this matter had been definitely settled in November, 1898, by a judgment in favor of plaintiff and was no longer an open question.

The defendant's fifteenth prayer asks that the jury be instructed that there is no legally sufficient evidence that defendant was guilty of any invasion of plaintiff's legal rights, in any of the alleged proceedings taken to recover possession of his premises at Roxbury, and the sixteenth prayer asks that the jury be instructed that they cannot consider any legal proceedings taken by defendant for collection of plaintiff's overdue notes or of rent from plaintiff.   There was no evidence that any of the proceedings referred to in the fifteenth prayer were in themselves either unlawful or unfounded, or that they were conducted in a harsh or oppressive manner.   The testimony of the plaintiff is that he was not present when his effects were removed from the house, and there was no evidence from any source that there was any violence, recklessness or negligence in their removal.   Defendant had a right, upon being put in possession of his premises, to remove plaintiff's effects in a proper manner, and to fasten up the house, and it was for the plaintiff to care for his effects after their removal.

We think therefore these prayers should have been granted.

The defendant's eighteenth prayer asks that all the letters of defendant offered in evidence subject to exception, or admitted over defendant's objection, in order to prove malice, be excluded as inadmissible under the pleadings.   The theory of this prayer is that since the words charged are actionable *per se* and therefore imply malice, and since the only defense is a denial of speaking the words and malice is admitted thereby, and since other actionable language is only admitted to prove malice, it follows that proof of other actionable language was not only unnecessary but injurious.

In 18 *Am. & Eng. Ency. of Law*, 2nd ed., 1093, it is said that in many cases an award of punitive or exemplary damages may be based merely upon the malice which the law implies from unauthorized utterance of defamatory words, but that the great weight of authority is otherwise, and supports the view that in order to such a recovery there must be some proof of actual or express malice. *Ibid*, 1002.

Malice has always been divided into two *kinds;* implied malice, or malice in law, and express malice, or malice in fact. The first is shown by mere proof of the unauthorized use of the defamatory words charged. The second may be shown by the acts or conduct of the defendant immediately accompanying the utterance of the words or by the utterance at other times of other and similar defamatory words, having reference to the subject-matter of the words charged.

The difference between implied malice and express malice is a difference in *kind* rather than in *degree* and this distinction should be borne in mind in considering this question.

In *Rigden* v. *Wolcott, supra*, where the speaking of the words charged was denied, JUDGE BUCHANAN says : " If every case for words actionable *per se* was made to depend upon the malice which the law implies, and of which the law knows no *degrees*, juries would have no criterion by which to measure the amount of their verdicts, and no grounds furnished them for giving exemplary damages, either as a compensation to the plaintiff or as a punishment of the defendant   *   *   The malice which the law implies is of itself sufficient to support the action, but the damages, to be commensurate with the offense, should be regulated by the *quo animo* with which the words were spoken."

Referring to this case, the Court, in *Wagner* v. *Holbrunner,* 7 Gill, 300, said : " In *all* actions of slander the plaintiff is permitted to prove the malicious *intent* in order to aggravate the damages ; " and in *Dorsey* v. *Whipps*, 8 Gill, 464, the Court said : " A departure from the general rule is allowed in some actions of tort, and evidence is received which it is supposed will aid the jury in ascertaining the amount of injury sustained

·by the plaintiff, and the amount of damages to be assessed by them."

All of these cases were like that before us, the words charged being actionable *per se*, and the plea in each being *non cul*, and their conclusions appear to us consonant with sound reason, and to control this case.    The mere utterance of defamatory words, not privileged, may afford no substantial evidence of malice in fact.    They may have been spoken in thoughtless though indiscreet jest, in unguarded repetition of idle rumor, or in momentary heat, free from real malice ; but if it be shown that similar words referring to the same subject have been uttered with more or less frequency, either before or after those charged, a presumption is created, varying in strength with the frequency and character of such utterances, that the words charged were not merely malicious in law but in fact.    We cannot feel justified in withholding from the jury the evidence which this prayer seeks to exclude from their consideration, but must leave it to be dealt with by them together with the language and conduct of the plaintiff as shown in the evidence, in order that their verdict may be based upon all the evidence in the case, as well that which makes for as against exemplary damages.

There does not appear to have been any ruling of the lower Court upon the plaintiff's special exceptions to the granting of defendant's eighth and ninth prayers and they are therefore not open to review here.    *Gunther* v. *Dranbauer*, 86 Md. 11; *Travelers Ins. Co.* v. *Parker*, 92 Md. 33.

Nor do we think it necessary to notice the plaintiff's objections to the signing of the bill of exceptions on the ground that the record is unnecessarily voluminous.    In cases of this character it is difficult to present the questions of law properly without going somewhat fully into the details of the testimony.

The judgment of the Superior Court is reversed with costs to the appellant above and below, and new trial awarded.

*Judgment reversed.*

(Decided June 19th, 1902.)