575 P.2d 1277

**Jack G. FURRH and Gloria Furrh, husband and wife, Appellants,**

v.

**Phillip ROTHSCHILD and Double U Ranch, Inc., Appellees.**

**No. 2 CA–CIV 2423.**

Court of Appeals of Arizona, Division 2.

Jan. 17, 1978.

Rehearing Denied Feb. 22, 1978.

Review Denied March 14, 1978.

James D. Whitney, Tucson, for appellants.

Schorr & Leonard, P. C. by David J. Leonard and Miller, Pitt & Feldman, P. C. by James R. Figliulo, Tucson, for appellees.

## OPINION

RICHMOND, Chief Judge.

Appellee Phillip Rothschild was the owner of certain real property near Tucson on which he and his predecessors in interest had operated a guest ranch for more than 20 years. In 1972, appellants Jack G. Furrh and Gloria Furrh, his wife, purchased 9.5 acres of land near the guest ranch. A roadway used for access to and from the guest ranch ran through the middle of the property acquired by the Furrhs.

In December 1972, Jack G. Furrh installed a barbed-wire fence across the roadway and Rothschild commenced an action to enjoin the Furrhs permanently from blocking access to his property. Subsequently, Rothschild conveyed his land and transferred the guest ranch business to Double U Ranch, Inc., a closely held corporation. The complaint was amended to join Double U as a plaintiff, and to seek an order quieting title in Double U to an easement over the roadway, as well as compensatory and punitive damages for malicious obstruction of its use. At the time the Furrhs answered the amended complaint, they also filed a

counterclaim asking for compensatory and punitive damages for malicious interference with the peaceful possession of their property.

During the pendency of the action the following occurred:

1. After superior court hearings in October and November 1973, the Furrhs were ordered to remove obstructions from the roadway and to permit Double U to maintain a sign at the corner of its intersection with a public road.

2. Another action against the Furrhs for personal injuries sustained by Rothschild, his son and an employee in an incident on the Double U property was commenced, settled and dismissed.

3. Double U's motion for partial summary judgment quieting title to the easement was granted.

4. On the morning of trial in April 1976, the Furrhs' counterclaim was dismissed for their failure to answer interrogatories.

The trial resulted in a jury verdict in favor of Double U Ranch, Inc., in the sum of $50,000 compensatory damages and $46,000 punitive damages.[1] In addition, the court awarded an attorney's fee of $16,645 pursuant to A.R.S. § 12–1103(B),[2] as amended. On appeal, the Furrhs challenge the admission of evidence, including testimony from two depositions, regarding the subject of the personal injury action; the court's instruction to the jury regarding the limited effect of such evidence; dismissal of the counterclaim; granting of the motion for partial summary judgment, and assessment of the attorney's fee.

## EVIDENCE

Immediately prior to trial, the court denied a motion to exclude any testimony regarding the personal injury action that had been settled and dismissed. Jack Furrh had entered the Double U premises to obtain photographic evidence for the hearing in November 1973, and Rothschild contended that after being ordered to leave, Furrh deliberately drove his car so as to strike Rothschild's son from the rear, and then recklessly struck Rothschild and the employee. The court ruled that testimony regarding the episode was relevant on the issue of Furrh's malice in performing other alleged acts, such as scattering roofing nails on the roadway and destroying Double U directional signs in violation of court orders.

While the trial court at the time of its ruling may have been unable to foresee the result, what followed was a trial of the automobile incident as well as the claim for interference with the easement. No less than seven witnesses, including two by deposition, testified about events that had been the subject of the personal injury action. Phillip Rothschild and his son described the occurrence and Furrh was cross-examined about it in plaintiffs' case in chief. Rothschild testified:

"Q. After he struck Kim, what happened?

"A. He started to back out immediately out this way so he could come around and go out the gate. I saw this happen.

"My immediate reaction was to stop him from getting away and I started running at full speed across here to cut across and stop him before he got out, but by the time he had backed out and gone this way, I did catch up with the car, it was traveling at a slow speed, and I was able to pull the car door open almost simultaneously, I guess, when he first observed me, because he started to accelerate immediately, fishtailed the car, and as I approached it from here to open the door, he got the car fishtailing and the back of

1. It was stipulated that the verdict included any claim of Rothschild individually.

2. "If a party, twenty days prior to bringing the action to quiet title to real property, requests the person, other than the state, holding an apparent adverse interest or right therein to execute a quit claim deed thereto, and also tenders to him five dollars for execution and delivery of the deed, and if such person refuses or neglects to comply, the filing of a disclaimer of interest or right shall not avoid the costs and the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court."

the car hit me, threw me over, and broke my hip."

After Furrh testified his car was moving "at probably one mile an hour" when it struck Rothschild's son, and portrayed the son's reaction as "a comedy act," the son was permitted to describe his injuries for the purposes of impeachment. Jose Villa, a laborer at the ranch, who was questioned only about the automobile incident, testified:

"Q. What did Mr. Furrh's car do?

"A. Well, he hit him, he pulled back, and go around here and over and out.

"Q. After he hit Kim, was there any activity by other persons on the ranch?

"A. Yes, sir.

"Q. What happened?

"A. Well, Mr. R. was over here.

"Q. Mr. R., is that Mr. Phil Rothschild?

"A. Yes, and one of the cowboys, John,—

"Q. All right.

"A. —was there, and Kim, he walked from here toward—through the trees here to come through here.

"Q. What happened, why was Kim going to help his dad?

"A. Well, because his dad was hurt. He was laying on the ground there.

"Q. How did his dad get hurt?

"A. Got hit by the car, Mr. Furrh's car."

In defendants' case, an employee of Furrh who was a passenger in the car described the incident and was cross-examined about it at great length. Appellees in rebuttal then were permitted to introduce a deposition taken in the personal injury action of a witness to the incident.

Clearly it would not have been error to exclude the evidence. *See LaFrentz v. Gallagher*, 105 Ariz. 255, 462 P.2d 804 (1969); *Beecher v. Montgomery Ward & Co., Inc.*, 267 Or. 496, 517 P.2d 667 (1973). Even if relevant on the issue of malice, the testimony at best was cumulative. Malice was inherent in the nature of the acts charged, i. e., the deliberate scattering of roofing nails on a roadway used by horses as well as vehicles and the destruction of directional signs in violation of court orders. Further, the hostility between the parties was not disputed, and appellants' defense was a denial of, rather than justification for, the acts with which they were charged. Appellants introduced evidence to suggest the nails had been scattered maliciously not by them but at the instigation of appellees.

On the other hand, not only were the facts of the automobile incident hotly contested, but also whether Furrh acted intentionally, recklessly or even negligently in causing the injuries. Thus, in order to establish any relevancy, it became necessary first to try the issue of malice in the personal injury action that already had been compromised and settled. Compare *Westropp v. E. W. Scripps Co.*, 76 Ohio App. 463, 59 N.E.2d 205 (1944).

The problem is discussed by Udall, Arizona Law of Evidence, § 111 (1960):

"[An] area where otherwise relevant and probative facts are excluded should be noted. Experience has taught us that certain kinds of evidence are likely to unduly arouse the hostility, prejudice or sympathy of the jury; others may create so many side-issues that the real matters in dispute are confused; still others may require so much time that their value in reaching the truth is outweighed by the inconvenience caused the courts." *Id.* at 203.

The Supreme Court of Oregon, in approving the exclusion of evidence of other acts similar to those in controversy, said in *Beecher*, supra:

"In such * * * situations, the relevance is weighed against the potential irrelevant use that can be made of the information considering that, in most instances, proving that defendant is a bad man or has been guilty of other thoughtless, negligent, or illegal conduct is extremely prejudicial." 517 P.2d at 670.

The question in the context of a criminal case is analyzed in *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960):

" * * * Relevancy is thus not the sole test of the admissibility of evidence; ad-

missibility depends, rather, on a balancing of the various effects of the admission of such evidence, considered in the light of recognized rules of law governing the administration of criminal justice." 87 Ariz. at 307, 350 P.2d at 763.

The more important question here, however, is whether the evidence had any relevancy. Civil cases considering the question of other acts as evidence of malice universally deal with similar conduct. Appellees place strong reliance on dictum in *Sutherland v. Kroger Company*, 144 W.Va. 673, 110 S.E.2d 716 (1959), in which plaintiff charged defendants with illegally searching her or her property. The West Virginia Supreme Court held it was reversible error to permit the jury to consider two other similar occurrences for the purpose of compensatory damages, saying that the only purpose for which such evidence could have been used would be to show malice to justify an award of punitive damages.

▇▇▇ Similarity of conduct is absent in the present case, and the evidence of the earlier incident should not have been admitted. Furrh's operation of his automobile during the confrontation described by both parties' witnesses bears no resemblance to the furtive conduct for which appellees sought damages. The fact that the incident occurred while Furrh was attempting to gather evidence for the hearing in November 1973 is not sufficient in itself to establish relevancy as to Furrh's state of mind at a later date in violating the court order that resulted from the hearing. Evidence of unrelated matters is inadmissible to show malice. *Gambrill v. Schooley*, 95 Md. 260, 52 A. 500 (1902).

Our reversal of that portion of the judgment awarding compensatory and punitive damages disposes of the questions regarding use of depositions about the automobile incident and the court's instruction to the jury on the limited effect of such evidence.

## DISMISSAL OF COUNTERCLAIM

▇▇▇ Imposition of sanctions for failure to answer interrogatories is within the discretion of the trial judge. 16 A.R.S. Rules of Civil Procedure, Rule 37(b); *Zakroff v. May*, 8 Ariz.App. 101, 443 P.2d 916 (1968). The record contains an order directing appellants to answer interrogatories by a date certain, and reflects their failure to do so prior to trial. There is no transcript of the hearing on appellees' motion for sanctions, which was taken under advisement. Thereafter, immediately prior to jury selection, the court ruled:

"I have considered in detail the Plaintiffs' motion for sanctions against the Defendant for failure to follow the Court's order to answer interrogatories, and I feel that this is a case in which extreme sanctions are warranted and I am going to grant the motion and dismiss the Defendants' counterclaim. The trial will proceed on the complaint, Count 3, before the jury."

On this state of the record, lacking any showing of excusable failure to comply with the court's previous order, we find no abuse of discretion in dismissal of the counterclaim.

## PARTIAL SUMMARY JUDGMENT

▇▇▇ In support of their contention that evidence of permissive use precluded summary judgment quieting title to the easement by prescription, appellants rely on the affidavit of Wesley H. Miller, their predecessor in interest, "[t]hat at all times the use of the ranch road was permissive by this affiant," and Miller's testimony at a hearing in February 1975:

"Q. And prior to this argument, had either Mr. Ritter, Mr. Mahler or Mr. Rothschild affirmatively, on behalf of themselves and Double U, claimed the right to use that road?

"A. No."

The quoted testimony did not raise a genuine issue as to any material fact, in view of the other evidence before the court of open, notorious, continuous, peaceable, adverse use of the roadway since at least 1950 by appellees and their predecessors in interest. Appellants correctly state that it is not sufficient that the claim of right exists only in the mind of the person claiming it, *La-*

*Rue v. Kosich,* 66 Ariz. 299, 187 P.2d 642 (1947), but Miller's testimony at the first hearing on order to show cause in December 1972 is dispositive on that point:

"When I bought the land I understood that I or, I have always thought that an ingress and egress meant just that, that they *had ingress and egress,* and *I had to keep it open.*"

It thus appears that any permission extended by Miller was based on his acknowledgment not only of the users' claim of right but its validity, and his affidavit did not create any material fact issue.

## ATTORNEY'S FEE

■ Appellants contend it was error to award an attorney's fee pursuant to A.R.S. § 12–1103(B) because the record discloses they made the requisite tender of a quit claim deed requested by Rothschild under the statute. The offered deed, however, retained a reversionary interest, providing that when the easement "is no longer used in the manner as set forth in the Complaint or necessary for ingress or egress . . . the said grant shall abate and no longer exist." Even though a right of way acquired by prescription is no longer necessary because of the habitual use by the owner of another equally convenient way, it is not extinguished unless there is an intentional abandonment of the former way. *Nichols v. Peck,* 70 Conn. 439, 39 A. 803 (1898); annotation 25 A.L.R.2d 1299, § 13. And an easement created by prescription may be lost by mere nonuse only if nonuse is for the prescriptive period. *Zimmer v. Dykstra,* 39 Cal.App.3d 422, 114 Cal.Rptr. 380 (1974). The conveyance, not being unconditional, failed to satisfy the statute and the trial court had discretion to determine whether an attorney's fee should be allowed and if so, in what amount. *McNeil v. Attaway,* 87 Ariz. 103, 348 P.2d 301 (1960).

So much of the judgment quieting title to the easement, awarding an attorney's fee and dismissing the counterclaim is affirmed. The judgment for compensatory and punitive damages is reversed and the case remanded for a new trial on the claim for wrongful interference with appellees' use of the easement.

HOWARD and HATHAWAY, JJ., concur.