# Staunton.

## DURHAM BROS. AND CO., INC. v. SARAH F. WOODSON.

September 12, 1930.

Absent, Holt, Hudgins and Gregory, JJ.

94

*Randolph G. Whittle* and *Curtis Simpson,* for the plaintiff in error.

*John G. Challice,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Plaintiff in error, hereafter called defendant, complains of a judgment in the sum of $400.00 against it in favor of defendant in error, hereafter called plaintiff. The action was brought by notice of motion and is based solely upon a violation of section 4822-D of Michie's Code, 1924, Acts 1920, page 516. The pertinent allegation of the notice is as follows:

"That heretofore, to-wit, on Saturday, October 27, 1928, at your invitation, solicitation and request I went into your store, known as a Mick or Mack store, owned and operated by you on Nelson street and Church avenue in the city of Roanoke to purchase goods and chattels for which I paid your agent, servant and employee the amount charged by you for the same, and as I was leaving your store as aforesaid with the goods so purchased and paid for as aforesaid your agent, servant and employee, Clayton H. Richardson, without any just cause or reason, in violation of my rights and without any search warrant issued by the proper officer of the city of Roanoke and in violation of section 4822-D of the Code of Virginia, while I was on the street in front of

your said store, came from the same and then and there in the presence of other people accused me of having taken goods from the said store without paying for the same and, by actual force, by taking hold of my arm and forcing me into said store, then and there, in violation of my rights, and of the statute as above set out, and without any warrant, made a search of my baggage and bundles, accusing me of having taken goods from the store without paying for the same, which search was unlawful as provided by statute * * * * * * ''

The defendant operates a "cash and carry" store in the city of Roanoke, and offers for sale principally groceries and vegetables which are conveniently placed about the store on shelves and racks with the sale price marked thereon. It employs no clerks. A customer enters its store, selects his purchases, carries them to a cashier into a so-called checking counter and there exhibits them to cashiers or "checkers" who inspect, count, weigh and wrap such merchandise in paper bags or pokes of the type used in the city of Roanoke exclusively by the defendant, and returns them to the customer who passes on by the cashier into an exit aisle, becoming thereby separated from such customers as have not paid for their purchases. The customer then passes from the exit aisle and on to the door through which he has entered, there being only one door for customers to enter and leave the store; but if the customer should not leave the store and should return among the customers who have not paid for their purchases, it would be necessary for him, in order to leave the store, to pass back through a checking counter and out through the exit aisle.

On Saturday morning, October 27, 1928, the plaintiff, a woman seventy-five years of age, accompanied by her adult son, entered the store of defendant for the purpose of buying groceries. The son carried into the store a large basket of

groceries purchased elsewhere and deposited same near the center of the store. Plaintiff selected from the shelves of the store a box of baking powder and a bottle of mayonnaise, gave her son the money to pay for the articles and remained standing near her basket of groceries. The son, according to the rules and regulations of defendant, took the articles named and went into one of the checking counters, exhibited them to Durham, the cashier on duty, who deposited them in paper bags used exclusively by defendant, and collected therefor the purchase price. Though denied by Durham, Clarence Woodson, the son, stated that he received the permission of Durham to leave the checking counter without passing through the regular exit aisle, in order to join his mother and save him from the necessity of carrying the large basket an appreciable distance. Plaintiff received from her son the articles purchased and deposited them in a hand bag, and together they left the store.

Clayton Richardson, an employee of defendant, whose duty it was to see that all merchandise was paid for and that customers made their exit by way of the regular aisle provided therefor, observing that plaintiff left the store in an irregular manner, carrying merchandise deposited in bags used exclusively by defendant, followed her to the sidewalk. The proof adduced by plaintiff tends to show that Richardson jerked her arm in an abrupt manner and said to her: "You haven't paid for that bread. Let me see." Thereupon plaintiff replied: "I have paid for everything I bought, the mayonnaise and baking powder." She then opened the bag and said: "Look." Richardson looked in the shopping bag, "grabbed" it out of her hand, put his hand in it, turned to enter the store and said: "You come in here, you have got something you didn't pay for." Also, it tends to show that his manner and attitude were those of one speaking "to a hound dog;" that he also looked into the bag after the return to the store; that when Durham

was approached he assured plaintiff the articles had been paid for and apologized for the occurrence.

Richardson's testimony is to the effect that when he observed plaintiff leaving the store in an irregular manner he followed her to the sidewalk, touched her upon the arm to attract her attention, accosted her in a polite manner and enquired of her "if she hadn't forgotten to pay for some of her groceries;" that when assured that the merchandise had been paid for, he apologized, considered the matter ended and re-entered the store; that he did not search the shopping bag at any time, nor did he ask plaintiff to return to the store.

The act in question upon which a recovery is based reads in part as follows:

"Every search warrant shall be directed to some officer now authorized by law to execute the same and shall command him to search the house, place, vehicle, or baggage or thing designated, either in day or night, and seize the property mentioned in such affidavit, and bring the same and the person or persons in whose possession the same are found before a justice or court having jurisdiction of the offense in relation to which such search was made; provided, that in cities and towns having a police force the warrant may also be directed 'to any policeman of said city or town' and shall be executed by the policeman or other officer into whose hands it shall come or be delivered." (Code, 1924, section 4822-b.)

"It shall be unlawful for any officer of the law or any other person to search any house, place, vehicle, baggage or thing except by virtue of and under a warrant issued by the proper officer. Any officer or other person searching any house, place, vehicle, or baggage otherwise than by virtue of and under a search warrant, shall be deemed guilty of a misdemeanor and be fined not less than fifty dollars nor more than five hundred dollars, or be confined in jail not

less than one month nor more than six months, or both, in the discretion of the justice, jury or court trying the same. Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages." (Code 1924, section 4822-d.)

■ The theory of the plaintiff is that the act prohibits a search of "any house, place, vehicle, baggage or thing" otherwise than by virtue of and under a warrant issued by the proper officer.

It is the contention of defendant that plaintiff was not entitled to recover unless she could show that the defendant or its agents or servants threatened to prosecute her or at least accused her of some crime or offense known to criminal law; that an unlawful search presupposes a search without a warrant for the purpose of discovering stolen goods or evidence of guilt to be used in a criminal prosecution or at least with a view of the possibility of a criminal prosecution; that the statute under which this action was brought does not enlarge the definition of an unlawful search; that one of the essential elements of an unlawful search is the intent to discover guilt of a crime or offense with a view to a criminal prosecution; that the plaintiff must establish her right to recover as if she had sued before this statute was enacted; that the whole chapter on search warrants must be read together; that there is but one definition of a search; that the statute has not enlarged the definition which the prior law gave it and that unless a search warrant was required or would be required or could be obtained for what it is desired to do, then there can be no unlawful search for doing that which the law does not provide that a search warrant may be obtained for doing; that the provisions of the Constitution and the purposes of the common law and the law prior to the enactment of this statute are directed primarily against oppressive governmental authority.

The trial court concurred in the contention of defendant that plaintiff was not entitled to recover punitive damages, but adopted plaintiff's theory that plaintiff was entitled to recover compensatory damages if an unreasonable search was made of plaintiff's bag, and gave to the jury the following instructions:

"The court instructs the jury that if you believe from a preponderance of the evidence that the defendant by and through its agent, servant and employee, Clayton Richardson, without having first secured from the proper officer a search warrant so to do, searched the baggage, bundles or hand bag of the plaintiff without her consent, then the plaintiff would be entitled. to recover from the defendant a verdict for compensatory damages in such sum as in your judgment is proper, not to exceed $2,500.00.

"The court instructs the jury that the gist of this suit or action is unlawful search of the plaintiff's baggage or other thing of like character and, unless the jury believe from a preponderance of the evidence that the employee and servants of the defendant, Durham Brothers, Incorporated, did unlawfully search the plaintiff's baggage or thing of like character, then the jury shall find for the defendant on its plea of not guilty."

In our opinion the instructions correctly state the law of the case. Under the common law, search warrants are generally employed as an aid in the detection of crime, and only unreasonable searches and seizures are inhibited. This is likewise true under our Code provisions, chapter 191 (section 4819, *et seq.*), relating to search warrants. They are directed to some law officer who is held responsible for their proper execution, and the "house or other place" to be searched is to be specifically described. However, we are not called upon in the instant case to consider either the rule at common law or the provisions of the Code of 1919, but to construe an independent act of the General

Assembly passed in the year 1920. It is a matter of common knowledge that for some years prior to the year 1920 there were complaints that many citizens were being harassed and humiliated by having their houses, vehicles and baggage searched, upon mere suspicion, by officers and other persons seeking to discover infractions of certain laws. It was primarily in response to these complaints that the legislature enacted the statute herein involved. That the language employed is perhaps too broad in its scope may be conceded. But this fault, if fault it be, is not to be corrected by the court, as correction lies within the exclusive province of the law-making branch of the government. That it was the intention of the legislature not to confine the right of search to houses or places, but to extend the same to vehicles, baggage and things is manifest from the language employed. So far as we have been able to ascertain, no such all embracing language has been employed in any of the prior statutes relating to search warrants; nor is there to be found in the Code any provision making a "person" liable for damages if he resorts to a search of "any house, place, vehicle, baggage, or thing," without first having obtained a search warrant. This provision is found for the first time in the Acts of 1920 and clearly indicates the intention of the legislature to depart from the general rule at common law and also to enlarge the right of search conferred by the Code, as well as to impose upon one who violates its provisions both a penal and a civil liability.

That the defendant did make a search of plaintiff's hand bag, which contained personal articles other than the merchandise purchased, is to our mind conclusively shown. Whether, under the facts and circumstances, the search was an unreasonable one was a question for the jury. They have answered the question by finding a verdict for the plaintiff and, unless error was committed by the trial court in refusing certain instructions offered by the defendant, the judgment must stand.

■ One of the instructions refused is as follows:

"The court instructs the jury that the term "baggage" as used in the law and in the statute prohibiting unlawful search of certain things (as stated in another instruction) means thosé things or articles of necessity or convenience which a passenger or traveler for his personal use, comfort or protection takes with him on a journey or during the continuance of a journey and that the term "baggage" does not include ordinary articles of merchandise unless a passenger or traveler should place them with his baggage as a part thereof."

The vice in the instruction lies in the fact that it limits the consideration of the jury to an unlawful search of the baggage of plaintiff while in contemplation of or during the progress of a journey, and interprets the term baggage to mean articles of necessity or convenience usually carried by a traveler. If the construction contended for by defendant be the correct one, then an officer or other person would be absolved from liability under the act, even though they unlawfully searched the hand bag of a woman who was merely crossing the street to pay her neighbor a social call. There is no merit in this assignment of error.

There are other assignments of error dealing with the refusal of the court to give certain other instructions offered by the defendant. Those instructions were properly refused, as the principles of law invoked were fully set forth in the instructions given.

The judgment of the Law and Chancery court for the city of Roanoke is affirmed.

*Affirmed.*