CATHERINE PHILLIPS, by Next Friend, v. DANIEL J. JOHNS, et al.

Middle Section.  December 6, 1930.

John W. Hilldrop, of Nashville, for plaintiff in error, Catherine Phillips.

Albert G. Ewing, of Nashville, for defendants in error, Johns, et al.

CROWNOVER, J. This is an action by Catherine Phillips, a minor, by her next friend, to recover damages for trespass vi et armis in that she was forcibly searched for stolen money by a teacher in a public school that she attended.

There is little dispute about the facts. Plaintiff in error, a minor almost fifteen years of age, was a pupil in the Howard School, a public school of the City of Nashville.

On the morning of March 30, 1928, Catherine Phillips took some flowers to school to her teacher, Mrs. Rose Felknor, and put them into a vase which was placed on her teacher's desk. She then went into the study hall and took her seat.

Between nine and ten o'clock A. M., Mrs. Felknor discovered that $21 had been taken from her pocket book in her desk. She reported this to the defendant, D. J. Johns, who was principal of the school, and stated that Catherine had been in her room, as evidenced by the flowers.

Defendant Mrs. H. Herbert Coone, the hall teacher, remembered that a boy had been excused from the study hall since the opening of school and that he had an opportunity to go into this room.

The suspicion of Mr. Johns, Mrs. Coone and Mrs. Felknor rested upon these two children.

It appears from the proof that access to Mrs. Felknor's room could be gained from the stairway outside of the hall, and that in fact another pupil had gone into the room without coming through the study hall and had taken the money and had left the school house without being seen. It appears that anybody could have entered that room from the back way without the knowledge of the teachers. Catherine Phillips says that Mrs. Felknor's room was an outside class room, and that when the children came to school before the school hours they were required to stay in that room.

Defendant Johns took the boy into his office and searched him, and directed Mrs. Coone to search Catherine Phillips. Mrs. Coone

called Catherine from her class room and took her into an unused room. She asked the child if she had anything that didn't belong to her. The child replied, no. She asked her what she had in her pocket and Catherine told her notes and then gave them to Mrs. Coone, who then directed her to take off her shoes and stockings and her clothes and she searched them. That is, she had her to remove her outer clothes and bloomers. Mrs. Coone told Catherine that she was searching her for notes that she thought that she had been writing to other pupils, which was against the rules. She found neither notes nor money on making the search.

While Mrs. Coone was searching Catherine and Mr. Johns was searching the boy, Mrs. Felknor went into the study hall where the children were seated and searched Catherine's desk, looking for the money, but found nothing.

None of the teachers told any of the pupils of making the search or what it was done for; and no one knew, not even Catherine, that the money had been taken, but in some manner it leaked out, possibly through the boy that had been searched, and the children told Catherine about it within the next day or two.

Catherine was frightened about being searched, and became sick and nervous, and was ashamed to go back to school. The other children heard of the theft and that Catherine had been suspected and searched. Her mother removed her from this school and sent her to another.

The declaration states these facts substantially, except that it avers that she was maliciously assaulted and cruelly treated and abused, but there was no proof to sustain these latter statements of the declaration.

Defendants filed a plea of not guilty, but during the progress of the trial were permitted to file a plea of justification.

The defendants admitted the search but seemed to rely upon their special plea of justification.

The case was heard by the judge and a jury. At the conclusion of all the evidence, the defendants moved the court for a directed verdict on the following grounds:

(1) That there was no evidence to support a verdict.

(2) That the evidence is at variance with the averments of the declaration and does not support the same.

(3) That the defendants did not act in bad faith.

(4) That the child was not cruelly treated.

(5) That a school teacher stands in loco parentis, and when a child is charged with taking money the teacher has a right to search the child the same as a parent would have in order to remove suspicion.

The judge sustained the motion and directed the jury to return a verdict for the defendants, which was done.

A motion for a new trial having been overruled, the plaintiff has appealed in error to this court and has assigned three errors, which go to but one proposition:

That the court erred in directing a verdict and in not submitting the case to the jury.

1. We are of the opinion that plaintiff's assignment of error, that the court erred in holding that as a matter of law plaintiff was not entitled to recover and in refusing to submit the case to the jury, is well made and must be sustained.

It is admitted by the defendants that the child was suspected, searched, and no money found.

The defense is that a teacher stands in loco parentis and is justified in searching a child when he or she has arrived at the decision that the child is guilty of a theft.

The weight of authority is that a teacher stands in loco parentis, but to a limited extent only.

> "The delegation by the parent of part of his parental authority to a schoolmaster places the latter in loco parentis, and gives him the power to exercise such restraint and correction as may be necessary to answer the purposes for which he is employed." 1 Bl. Com., 453.

> "As a general rule a school-teacher, to a limited extent at least, stands in loco parentis to pupils under his charge, and may exercise such powers of control, restraint, and correction over them as may be reasonably necessary to enable him to properly perform his duties as teacher and accomplish the purposes of education." 35 Cyc., 1134.

The question whether this search was made for the benefit of Mrs. Felknor, to recover her money, or whether it was made for the ethical training of the child, was for the jury. A teacher cannot claim justification on the ground that he or she is acting in loco parentis, if they search a child for the benefit of a third person. The relationship of teacher and pupil does not exist if the act is done for a third person.

A teacher is given the powers of a parent over the child to the extent that is necessary to educate him or her and to preserve order necessary to the carrying on of the same; but if the teacher undertakes to recover money for a third person, this is not within the scope of the teacher's authority and employment, and the general law will apply to the case. The situation becomes one of a private individual searching another, forcibly, for the benefit of a third person.

The evidence is that the child was not cruelly treated or the search maliciously made. However, there was an illegal search,

which may not be more than a technical assault, but the court was not justified in taking the case from the jury.

If there was a search for individual benefit, then there is a right of action.

"Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings, or for the maintenance of any mere private right; but their use was confined to cases of public prosecutions, instituted and pursued for the suppression of crime or the detection and punishment of criminals. All searches, therefore, which are instituted and pursued on the complaint or suggestion of one party into the house or possessions of another, in order to secure a personal advantage, and not with any design to afford aid in the administration of justice in reference to acts or offenses in violation of penal laws, must be held to be unreasonable, and consequently under the constitutional provisions unwarrantable, illegal and void." 24 R. C. L., 719, sec. 23.

Defendants rely greatly upon the claim that they searched the child to remove suspicion from her. We cannot assent to this proposition, as under the law there is a presumption of innocence, and to hold otherwise would reverse one of the fundamental rights of every citizen, which we inherited from the common law and is now observed by every enlightened country. Coffin v. U. S., 156 U. S., 456, 39 L. Ed., 492. So defendants cannot claim justification on that ground.

Our Supreme Court has held that even an officer is not justified in searching a whiskey runner's car on suspicion.

"Officers are not justified in holding up automobiles upon mere suspicion of transporting liquor, unsupported by plausible grounds, as regards right to search." Dittberner v. State, 155 Tenn., 102, 291 S. W., 839.

To the same effect is Lucarini v. The State, 159 Tenn., 373, 19 S. W. (2d), 239.

A child in the public schools of the state is entitled to as much protection as a bootlegger.

A search warrant will not issue unless a probable cause is shown. Code secs. 7296 to 7311.

If Mrs. Coone is liable Johns is also liable. Presley v. State, 30 S. W. (2d), 231.

2. It is insisted by the defendants that the plaintiff's assignments of errors do not conform to the rules of this court, in that neither of them, in express terms, challenges the action of the trial court in overruling defendant's motion for a new trial. We are of the opinion that this contention is too technical and is not well

made. We had this identical question up in the case of L. & N. R. R. Co. v. Carrie Bell Evins, Davidson County Law, on August 6, 1930, in which Presiding Justice Faw, who delivered the opinion of the court, said:

> "This court has not heretofore construed the above quoted Rules, or the decisions upon which they are based, as requiring that the assignments of error must necessarily, in terms, 'assault as erroneous' the action of the trial judge in overruling the motion for a new trial. Whether the appeal is from the judgment (as expressly stated in Railroad v. Ray, 124 Tenn., 16, 28, 134 S. W. 858, and Bostick v. Thomas, 137 Tenn. 99, 101, 191 S. W. 968), or from the order overruling the motion for a new trial (as seems to be suggested in Hamburger v. Railroad, 138 Tenn., 123, 131, 196 S. W. 144), we think the reason for the Rule is met when, as in the instant case, the record discloses a motion for a new trial seasonably made in the lower court, and ruled adversely to the plaintiff in error, which motion specifically and clearly challenged as erroneous the rulings of the trial court assailed by the assignments of error filed in this court; and we are not aware of any holding of the Supreme Court inconsistent with this view. We therefore hold that defendant's assignments of error are not fatally defective because of the omission of a specific assertion therein that the trial court erred in overruling the motion for a new trial."

3. It is insisted that there is a variance between the declaration and the proof, in that the declaration averred malice, violence, force, wanton cruelty of conduct, and that she was handled in a rough, violent manner, threatened, jerked and shaken, and accused of theft in the presence of her school companions, whereas there was no evidence of force or violence, or even of physical contact, and that she was not shaken, jerked, or her clothes torn, or any unkind words said to her, and that no indignities were shown; hence it is insisted that there is a variance between the declaration and the evidence.

After an examination of the record we are of the opinion that this contention is not well made, as an illegal search is averred and proven, and the fact that it was done with violence, as averred in the declaration, would only aggravate the damages, and this does not constitute a variance.

> "If plaintiff proves sufficient on which to base a recovery he is not required to prove more, although more is alleged. And under a complaint charging that an assault was committed wantonly, maliciously, or wilfully, it is only necessary to prove that the assault was intentional." 5 C. J., 662, Sec. 98.

"To constitute a material variance there must be a substantial departure in the evidence from the issues upon which the cause of action or defense depends. There must be a disagreement between the allegation and the proof in some matter which, in point of law, is essential to the claim or defense relied upon. The rule that proof must correspond to allegation applies only to such allegations as are in themselves essential to the claim or defense, or which in some way qualify those which are, by their connection with them, in the mode of statement, and so become essential." 49 C. J., 808-9, sec. 1190.

"A variance which does not affect the gist of the action as alleged is immaterial." 31 Cyc., 702; 49 C. J., 809, sec. 1190.

"There is no variance if the proofs sustain a portion of the allegations of the pleading, provided such portion amounts to a cause of action, according to the general principle that if the pleader alleges more than is necessary, the additional allegations need not be proved." 31 Cyc., 701-2.

4. It is insisted that the school teacher belongs to the class of public officers vested with such judicial and discretionary powers that they cannot be held personally liable for mistakes made as to the method of conducting the schools where they act in good faith. But we are of the opinion that this contention is not well made in view of the circumstances of this case. A school master has a right to preserve order and decorum in the school, and to even punish students for infractions of the rules, but he had no right to inflict cruel and unusual punishment, nor to step aside from such purpose to search children on suspicion, or to exercise by virtue of his office discretionary quasi judicial powers.

It was said by our Supreme Court in Anderson v. State, 3 Head, 454:

"When the relation of schoolmaster and scholar, or any similar relation, is established in defense of a prosecution for an assault and battery, the legal presumption is that the chastisement is proper, and this, to warrant a conviction, must be rebutted by showing that it was excessive, or without proper cause."

• "A schoolmaster has the power to enforce obedience to his rules and to use the rod when necessary, but he cannot chastise wantonly and without cause. His chastisement must be proportionate to the offense, and within the bounds of moderation. If excessive, or without cause, the schoolmaster is guilty of an assault and battery."

In the case of Lander v. Seaver, 32 Vt., 114, 76 Am. Dec., 156, it was said by the Supreme Court of Vermont that:

"We think the school master does not belong to the class of public officers vested with such judicial and discretionary powers. He is included rather in the domestic relation of master and servant, and his powers and duties are usually treated of as belonging to that class. In some sense he may be said to act by public authority, and to be a public officer, but we do not find him spoken of anywhere as acting in a judicial capacity. . . . In no proper sense can he be deemed a public officer exercising, by virtue of his office, discretionary and quasi judicial powers."

It results that we hold that the assignments of errors are well made and must be sustained. The judgment is reversed and the cause remanded to the Circuit Court of Davidson County for a new trial. The cost of the appeal is adjudged against the defendants, for which execution may issue. But the cost of the cause in the court below will await the final determination of the suit.

Faw, P. J., and DeWitt, J., concur.