ALTA MAE SUTHERLAND

*v.*

THE KROGER COMPANY, *a Corporation, et al.*

(No. 11049)

Submitted September 22, 1959. Decided October 27, 1959.

674

*Crockett, Tutwiler & Crockett,* for plaintiff in error.

*Harry G. Camper, Jr., Chauncey H. Browning, Jr.,* for defendant in error.

BERRY, JUDGE:

This action was instituted by the plaintiff, Alta Mae Sutherland, against The Kroger Company, a corporation, B. E. Honaker and Dixie Lee High, defendants, in the Circuit Court of McDowell County, West Virginia. The declaration is rather lengthy, but it charges the defendants with illegally searching the plaintiff or her property on November 14, 1957, and with slander in connection therewith. It also alleges that the plaintiff was searched on two other occasions by the defendants without cause or justification and merely sets out the dates of the other alleged searches. The action was dismissed as to the defendant, Dixie Lee High, after the jury was selected to try the case, and it was dismissed as to the defendant,

B. E. Honaker, after he testified as a witness for the plaintiff during the trial, leaving The Kroger Company, a corporation, as the only defendant. The case was submitted to the jury and the jury returned a verdict in favor of the plaintiff in the amount of $5000.00, of which $2000.00 was for compensatory damages and $3000.00 for punitive damages. The defendant's motion to set the verdict aside was overruled and judgment entered thereon. A writ of error and supersedeas to this judgment was granted by this Court.

There is very little conflict with regard to the facts in this case. The defendant operates two supermarkets in the City of Welch where customers go through the store and select certain articles they desire to purchase. After they have selected the articles, they pass through a lane and the articles are placed on a counter where they are checked and packaged by an employee who collects the amount due for the articles of merchandise from the customer.

The plaintiff, Alta Mae Sutherland, had been a customer of the Kroger Company's Store in Welch for several years. She usually did her shopping at other stores before buying her groceries at Kroger's, because it was located near where she resided.

On October 10, 1957 the plaintiff went to the defendant's store and took with her a bag containing sweet potatoes and apples which she had purchased at another store. After she had selected articles from the defendant's store, she went to the check-out counter and placed the articles with the other package on the counter. The cashier for the defendant company on this occasion, Marie Craig, checked the articles and at the same time, according to the plaintiff, asked: "Mind if I see" and looked into the bag the plaintiff had brought in the store with her. Nothing belonging to the Kroger Company was found in the bag. There were several people around the check-out counter, but the plaintiff said that she did not hear anyone make any comments with regard to the matter at that time. However, Mrs. Craig, who was no

longer employed by the defendant at the time she testified, stated that a colored man immediately behind the plaintiff made the remark, "Look, I believe she is catching a shoplifter". Mrs. Craig said the reason she searched the plaintiff's bag containing the sweet potatoes and apples was because the manager, Mr. Honaker, had made a strict rule when he came there, instructing each and every cashier to search everybody's bag or package brought through the store when selecting groceries. Mrs. Craig testified that on this occasion she said to the plaintiff: "Mrs. Sutherland, honey, I'm sorry, but I will have to look in your bag, honey, because we have had strict orders that everybody that comes through our line we have to search their bag" and that Mrs. Sutherland said: "Well, honey, there isn't anything in it but sweet potatoes and apples" and then Mrs. Craig said: "Well, let me look anyway." She said the statements and the search were all made about the same time and that Mrs. Sutherland didn't like it. After the checking of the articles and the search of the package were made or done, the groceries and packages were given to the plaintiff and she stated that she got out of the store as quickly as possible because she was humiliated and embarrassed. After this occasion she testified that she told her husband what happened and that he called the manager of the other Kroger Store located in Welch. Soon after this call she stated that Mr. Honaker, the manager of the Kroger Store where the incident took place, came to see the plaintiff and said he was sorry it happened and for the plaintiff to come to the store and he would have Marie apologize.

The record does not indicate that any apology by Mrs. Craig was ever made, but on November 7, 1957 the plaintiff again went into the defendant's store carrying a package with articles she had purchased at another store. She again took her package with her while selecting the articles she desired from the defendant's store and brought them to the check-out counter and placed them on same. On this occasion the cashier who

checked her articles was Maxine Colo. The plaintiff testified that Mrs. Colo did like the others and said, "Let me see", looking in the package at the same time. She said nothing was found in the package or bag on this occasion that belonged to the defendant and that there were other people around at this time. She testified that as a result of the looking into her bag on this occasion, she was again embarrassed and humiliated and that she felt bad about it, that she was very upset; that she was so nervous when she went home she could hardly cook dinner and it was necessary for her to quit and lie down two or three times.

On November 14, 1957, the day the events took place on which this cause of action is based, the plaintiff again came into defendant's store with a bag containing articles she had purchased elsewhere. She took this bag with her when she went through the Kroger Store to select articles she desired to purchase there. After she had selected all the articles she wanted she proceeded through the check-out lane, placing all the articles, including the bag she had brought in with her, which she said contained gloves she had purchased elsewhere, on the counter. Dixie Lee High, an employee of the defendant, checked the articles selected from defendant's store and also checked the bag the plaintiff had brought in with her. The plaintiff stated that Miss High said, "I have got to see" or something to that effect, and at the same time she asked she was looking into the package. Miss High stated that when the plaintiff came through the lane she checked her groceries and before collecting her money asked if she might check the bag she had brought in with her, that the plaintiff just gave her the bag and she took it, opened it, looked into it, then gave it back to the plaintiff and thanked her. Miss High stated that her duties as a cashier, the position she held with the defendant at the time, were to check out the groceries and to check any bags that were brought into the store by the customers, if they did not object; that she had been instructed to do this by the

store manager, Mr. Honaker, and that signs were posted at several places in the store, which read: "We reserve the right to investigate all bags and shopping bags". She stated that she knew the plaintiff, that she had no ill feelings toward her and treated her in the same manner she treated all the other customers. She also testified that there was a small office located in the front of the store used for the purpose of customers checking any bags or packages brought into the store by them.

The plaintiff stated that there were other people in the line behind her but did not state that any comments were made by anyone at that time, and that when Miss High handed her package back to her with her groceries, she got out of the store and went home, that she was again embarrassed and humiliated. She said that Miss High did not find anything in her bag that belonged to the Kroger Company, and that she has not shopped at the defendant's store since the occasion on November 14, 1957.

The plaintiff was asked: "What effect, if any, have *these actions* and the *searches* and *examinations* of your *packages* that you have testified to here had upon your physical condition?" [Emphasis supplied] An objection was made to this question but was overruled by the trial court and the plaintiff was allowed to answer in the following language: "Well I know it certainly has done an awful lot of damage to my health. I have been unable to sleep and I have hardly eat anything, and I have lost an awful lot of weight, and it has done an awful lot of damage to my health."

Dr. Louis Z. Wright testified on behalf of the plaintiff and said that he saw her at her home in Welch in February, 1958, some three months after the last occasion of alleged search upon which this action is based. Dr. Wright stated that he found the plaintiff in a highly nervous state, that she was shaking and complaining of severe headaches, dizziness and nausea; that his examination at that time revealed a rapid heartbeat, high

blood pressure, nervous tension or nervous anxiety and what is known as essential hypertension. He further stated that during the examination he obtained a history from the plaintiff to the effect that in the fall of 1957, she was in Kroger's Store *and had been searched on "numerous occasions"* and that she is embarrassed and humiliated when she goes downtown, that it worries her, thinking that she has been accused of something that she is not guilty of, and that prior to that she had no trouble other than menopause, and that in his opinion, from his examination and the history given to him, the embarrassment and humiliation would cause her to worry and would bring on the nervous anxiety, nervous tension and essential hypertension. All of this testimony was objected to by the defendant and said objections were overruled by the trial court and exceptions taken to said rulings.

Before the jury was empaneled, counsel for the defendant moved the court to require the plaintiff to elect whether she relied upon an action of slander, false arrest or unlawful search, which motion the court refused, and counsel for the defendant timely objected and excepted to the court's ruling on said motion. After the taking of the evidence was completed the defendant renewed its motion to require the plaintiff to elect what action she relied on and stated that the plaintiff had indicated that she was not relying on false arrest. The plaintiff in her brief confirms this, stating that she does not rely on false imprisonment and that it should not be considered. During the court's considering the instructions to be given to the jury, counsel for the defendant moved the court to require the plaintiff to elect which of the three unlawful or illegal searches on which she introduced testimony during the trial she would rely on, to which motion the plaintiff, by counsel, objected. This motion was made in connection with Instruction 10, offered by the defendant, which would have told the jury that it could not find any damages for the plaintiff based upon any incident other than the one on November 14, 1957.

No disposition was made by the court of the motion, but this Instruction was refused.

The defendant assigned many errors in its petition for a writ of error and in its brief for reversal, but they can be summarized briefly as follows: Recovery is not warranted under the law and evidence; the verdict is excessive; the evidence of Dr. Louis Z. Wright was improper; recovery, if any, should be limited to what occurred on November 14, 1957; plaintiff should have been required to elect as to the cause of action she relied on for recovery; the trial court erred in giving certain instructions offered by the plaintiff over the objection of the defendant, and in refusing to give certain instructions offered by the defendant.

The declaration in this case only alleges facts to sustain actions for an illegal search on November 14, 1957, and for slander. Therefore, there could only be recovery, in any event, for these two torts. There is no merit to the motion of the defendant to require the plaintiff to elect as to false imprisonment made several times during the trial because there is no pleading or proof to sustain such action. Then too, the plaintiff has stated in her brief that she did not rely on false imprisonment. For this reason, the authority, such as, *Lester* v. *Albers Super Markets,* (Ohio) 114 N. E. 2d 529, pertaining to the law governing false arrest relative to a qualified privilege of detention for a reasonable time, is not applicable to this case. See *Banks* v. *Food Town,* (La.) 98 So. 2d 719.

The evidence is the same as it applies to both the charge of illegal search and the alleged slander. They are related actions based on the same transaction and neither requires negligence on the part of the defendant for recovery of damages. 86 C. J. S., Torts, §22 and §40. These related torts arising out of the same transaction can be joined in the same declaration. *Szymanski* v. *Great Atlantic & Pacific Tea Co.,* 79 Ohio App. 407, 74 N. E. 2d 205; *Little Stores* v. *Isenberg,* 26 Tenn. App.

367, 172 S. W. 2d 13; *Fenn* v. *Kroger Grocery & Baking Co.*, (Mo.) 209 S. W. 885. The plaintiff apparently treated the case during the trial as one for illegal search, because there were no instructions offered on her behalf for the charge or action of slander. In fact, the instructions C-2 and D offered by the plaintiff and given by the court specifically refer to and apply only to illegal search. They state that "* * * the gist of this suit or action is the unlawful search of the plaintiff's bag * * *" and if they find the plaintiff is entitled to recover for either compensatory or punitive damages, or both, it is to be based on the unlawful search or in searching the plaintiff's effects. The plaintiff indicates in her brief that she is now relying on slander as well as illegal search. There is no evidence of any malicious act on the part of the employees of the defendant on any one of the three occasions testified to by the plaintiff when she claims her packages or bags were searched by them. In fact, it clearly appears that they were polite and courteous on each occasion. If the employee of the defendant corporation who made the statements is not personally liable for the words uttered, the corporation is not liable. *Federal Land Bank* v. *Birchfield*, 173 Va. 200, 3 S. E. 2d 405; 12 M. J., Libel and Slander, §14.

Malice is an essential element of slander and although it may be implied, the words spoken should clearly imply the slander on which the action is based. 12 M. J., Libel and Slander, §13. There were no words used on any of the occasions in question that would indicate or imply slander. Where words are not, in themselves, actionable, it must be shown that they were uttered with a malicious purpose to injure the plaintiff. *Gatewood* v. *Garrett*, 106 Va. 552, 56 S. E. 335.

There is no evidence of any loud demand by Dixie Lee High that a search be made of the plaintiff's property, and no statements made that she must search her possessions for stolen articles, all of which is alleged in the declaration. The innuendoes in the declaration improper-

ly extend the meaning of the words and actions of the defendant's cashier on the occasion on which this cause of action is based. Innuendoes are used merely to explain and they cannot be used to aver or charge a fact or enlarge language or actions theretofore used, and never to establish a new charge. *Parker* v. *Power Co.,* 126 W. Va. 666, 30 S. E. 2d 1; 33 Am. Jur., Libel and Slander, §241.

Only one cause of action has been alleged in the declaration for which recovery can be had in this case. It is for the illegal search of the plaintiff or her property on November 14, 1957. The other occasions, October 10, 1957 and November 7, 1957, are not properly pleaded and recovery cannot be had on them, in any event, in the instant case, because each occasion constitutes a separate and distinct cause of action and must be sued on separately. The same rule as to separate causes of action applies to slander and false imprisonment on different occasions, because they are related actions. See *Anderson* v. *Shockley,* 266 (Mo.) 543, 181 S. E. 1151; 53 C.J.S., Libel and Slander, §194, paragraphs c and d. The only purpose for which the evidence of the searchers on the other occasions could be used in the case at bar would be for an attempt to show malice on the part of the defendant to justify the awarding of punitive damages. See *Anderson* v. *Shockley,* 266 (Mo.) 543, 181 S. W. 1151; *England* v. *Dailey Gazette Company,* 143 W. Va. 700, 104 S. E. 2d 306; 33 Am. Jur., Libel and Slander, §334.

This is a case of first impression in this state. In fact, there are very few reported cases in this country dealing with the exact questions involved here. The constitutional provisions in the State and Federal Constitutions prohibiting unreasonable searches and seizures, and the provision for the issuing of warrants only on probable cause, are only applicable to the State and Federal Governments and not to private individuals. *Burdeau* v. *McDowell,* 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A.L.R. 1159; *Imboden* v. *People,* 40 Colo. 142, 90 P. 608; *Phillips* v. *Johns,* 12 Tenn. App. 354; *People* v. *Tarantino,* 45 Cal.

2nd 590, 290 P. 2d 505; *U. S.* v. *Jordan,* 79 F. Supp. 411; *Walker* v. *Fenner,* 190 Ore. 542, 227 P. 2d 316. It should be pointed out that not all searches and seizures are prohibited by the constitutional provisions. Only those which are unreasonable are prohibited. *State* v. *Bruner,* 143 W. Va. 755, 105 S. E. 2d 140; 79 C. J. S., Searches and Seizures, §8.

Notwithstanding the apparent rarity of this type of case, it is a recognized action at common law. An illegal search by a private individual is a trespass in violation of the right of privacy. This matter is discussed in 86 C.J.S., Torts, §40, wherein the following language appears: "Any intentional invasion of, or interference with, property, property rights, personal rights, or personal liberties causing injury without just cause or excuse is an actionable tort."

The defendant contends that the plaintiff is not entitled to recover damages in this case because she received no physical injury on the occasion in question, and that there can be no recovery in tort for an emotional and mental trouble without ascertainable physical injuries being connected therewith. The West Virginia case of *Monteleone* v. *Transit Co.,* 128 W. Va. 340, 36 S. E. 2d 475, is cited to support this contention and it so holds, but it is a different kind of case than the one at bar. The *Monteleone* case involved a tort in which recovery is based on the negligence of the defendant. The case at bar is based on a trespass in which there is an invasion of the right of privacy and recovery can be had regardless of whether or not the plaintiff has received a personal injury. The distinction in connection with these different classes of torts is contained in a discussion dealing with this matter in 86 C.J.S., Torts, §22, which reads as follows: "Although damage is an essential element of tort, a fundamental distinction is to be observed between two classes of torts, one composed of legal wrongs in themselves constituting invasions of right and thus giving rise to legal damage, the other of breaches of

duty not necessarily violative of legal rights and with which some actual express damage must concur in order to establish the violation of right essential to tort. In the former class, damage flows from the wrongful act, itself injurious to another's right, although no perceptible loss or harm accrues therefrom; in the latter, however, some specific actual damage is a condition precedent to the tort." A discussion on this subject is also found in 47 Am. Jur., Searches and Seizures, §73, wherein it is stated: "In estimating the damages recoverable, [for wrongful search] injury to a person's property, reputation, and feelings may be taken into consideration, as well as the disturbance of his family. In mitigation of damages in trespass for a wrongful search, however, circumstances tending to arouse reasonable suspicion, for example, that stolen goods were on the premises, * * * may be proved."

There are many reported cases in this country allowing recovery of damages on the same elements claimed here in related cases to the one at bar, such as, assault, false arrest and slander. The amount of recovery is usually based on the severity of the actions and language used by the defendant. See *Jones* v. *Hebdo,* 88 W. Va. 386, 106 S. E. 898; 35 A.L.R. 2d 263.

It will be noted, however, in the instant case the plaintiff was allowed to recover compensatory damages on all three actions at one time. The three occasions, October 10, 1957, November 7, 1957 and November 14, 1957, as heretofore set out, constituted separate and distinct causes of actions. They could be sued on separately, but not at the same time. Evidence of the three different occasions, as heretofore indicated, could only be used or received in this trial in an attempt to show malice on the part of the defendant for the purpose of obtaining punitive damages. *Anderson* v. *Shockley, supra.*

It was error to allow the plaintiff to testify, and for the jury to consider, what effect all three searches and examinations of her packages had upon her physical con-

dition, over the objection of the defendant. It might be well to point out in connection with this matter that it appears from the plaintiff's evidence that she suffered more from the actions of the defendant's cashier on November 7, 1957, than she did on the other occasions. She stated that on that occasion she felt bad about it, that she was very, very upset and when she went home she was so nervous that she could hardly cook dinner, that she had to quit two or three times and lie down on the couch. It was also error to allow Dr. Wright to testify, and for the jury to consider, over the objection of the defendant, the fact that he based his diagnosis of the plaintiff's condition on the history that she gave him of being *searched on numerous occasions* when she was in the defendant's store in the fall of 1957. The jury should have been told that this action was based only on the occurrence of November 14, 1957, and the motion of defendant's counsel to this effect should have been granted. It therefore follows that inasmuch as the jury was allowed to consider all three occurrences for the purpose of compensatory damages the verdict is erroneous and should be set aside. The evidence dealing with the two other occasions when the plaintiff was in the defendant's store should have been properly limited.

Another assignment of error upon which the defendant relies is that the evidence of Dr. Louis Z. Wright was improper and prejudicial. We have indicated above that it was error to allow Dr. Wright to testify before the jury that he based his findings on all of the occasions as related to him in the history obtained from the plaintiff, but the defendant contends that it was error to allow Dr. Wright to testify because his examination was too remote with regard to the cause of the nervousness, tension, rapid pulse and high blood pressure and implies that the examination was made in connection with this action. The defendant cites no authority in its brief to sustain this proposition, but apparently relies on the fact that Dr. Wright did not examine the plaintiff until

February, 1958, which was about three months after the last occasion plaintiff was in the defendant's store.

It is a well recognized exception to the hearsay rule that a doctor who examines a patient for the purpose of treatment may testify as to his medical conclusions, which may be based on the history given to him by the patient with regard to subjective symptoms. *Foulkrod* v. *Standard Acc. Ins. Co.*, 343 Pa. 505, 23 A. 2d 430; 67 A.L.R., §II, page 11. However, it has been held that where the examination is not made within the doctor-patient relationship for the purpose of treatment but is made solely for the purpose of using the doctor as a witness, the rule or exception set out above disappears. The reason given in such case is that the party being examined may think his best interest will be served by exaggeration and fabrication of symptoms. *Petersen* v. *Dept. of Labor and Industries*, 36 Wash. 2d 266, 217 P. 2d 607; *Roellich* v. *Department of Labor and Industries*, 30 Wash. 2d 674, 148 P. 2d 957; 67 A.L.R., Sec. III, page 15.

Under the facts in the record of this case before us at this time, it is not clearly shown whether the doctor examined the plaintiff for the purpose of qualifying as a witness in order to testify in her behalf in this law suit, or whether he examined her for the purpose of treatment. Therefore, we are of the opinion that it was not error to allow the jury to consider the testimony of Dr. Wright, except for the reasons heretofore stated.

The fact that the defendant had a sign or signs posted in its store to the effect that it "reserved the right to investigate all bags and shopping bags" would not relieve it of liability if the evidence in the case indicates that an illegal search was conducted. *Great Atlantic and Pacific Tea Co.* v. *Smith*, 281 Ky. 583, 136 S. W. 2d 759.

The instructions given by the trial court in this case properly submitted to the jury the question of consent on the part of the plaintiff to the search. It must clearly appear that a person voluntarily permitted or expressly

agreed to the search in order for same to be a good defense, and whether such consent was freely given is a question of fact for jury determination. 47 Am. Jur., Searches and Seizures, §71; 74 A.L.R. page 1437.

The instructions dealing with slander, offered by the defendant and given by the court, should not have been given in this case. However, the defendant cannot complain with regard to this matter because they were presented to the jury at its suggestion. Instruction No. 10, offered by the defendant and refused by the court, would have told the jury that they could not find *any damages* for the plaintiff based upon any incident other than the one on November 14, 1957. If this instruction had read that the jury could not find *any compensatory damages* for the plaintiff except for the incident that occurred on November 14, 1957, it would have been a good instruction, and it was not error to refuse this instruction in the form offered.

Instruction No. E, offered by the plaintiff and given by the court, to which the defendant objected for the reason that it was not applicable to this case, reads as follows: "The Court instructs the jury that if you believe from a preponderance of the evidence in this case that the defendant, by and—through its agents, servants and employees, *without having first secured a proper search warrant so to do,* but pursuant to a rule of the defendant company, searched the bag, bundle, package or other effect of like character of the plaintiff, without her consent, then the plaintiff would be entitled to recover from the defendant a verdict for damages in such sum as in your judgment is proper, just and reasonable to compensate her for the damages she has sustained by reason of such search." [Emphasis supplied.] This instruction, in effect, told the jury that if they believed from the evidence that the defendant, through its agents, searched the plaintiff's bag without having first secured a proper search warrant so to do, and without her consent, the plaintiff would be entitled to recover from the defendant. The authority given by the plaintiff to war-

rant the giving of this instruction is the case of *Durham Bros. & Co.* v. *Woodson,* 155 Va. 93, 154 S. E. 485. This case involved the same type of action involved in the case at bar. The plaintiff sued for an alleged illegal or unlawful search by the defendant's agents in the same type of store as that operated by the defendant in the instant case. One of the instructions given in the *Durham* case dealing with the failure to obtain a search warrant is similar to the one in question here. However, the instruction given in the *Durham* case was under the authority of a specific statute passed by the Legislature of the State of Virginia in 1920, which provides for the obtaining of a search warrant by a private individual to search any house, place, vehicle, *baggage* or thing. There is no such statute in West Virginia and no authority is given to private individuals or corporations in this state to obtain search warrants and search the property or bags of other persons. The statute in this state dealing with this matter provides that every search warrant shall be directed to an officer and shall command him to execute same. See Code, 62-1-18. The constitutional provisions with regard to search and seizure and warrants therefor apply only to officers and not to private persons. *Burdeau* v. *McDowell, supra; Imboden* v. *People, supra; Phillips* v. *Johns, supra; People* v. *Tarantino, supra; U. S.* v. *Jordan, supra; Walker* v. *Fenner, supra.*

In the case given as authority to support Instruction E, *Durham Bros. & Co.* v. *Woodson, supra,* the Virginia Court indicated its reasons for giving such an instruction and the reasons clearly indicate that the same type of instruction would be improper in this state, wherein it is stated on page 487 of that case: "That it was the intention of the Legislature not to confine the right of search to houses or places, but to extend the same to vehicles, baggage, and things is manifest from the language employed. So far as we have been able to ascertain, no such all-embracing language has been employed in any of the prior statutes relating to search

warrants; *nor is there to be found in the Code any provision making a 'person' liable for damages if he resorts to a search of 'any house, place, vehicle, baggage, or thing,' without first having obtained a search warrant.* This provision is found for the first time in the Acts of 1920 and clearly indicates the intention of the Legislature to depart from the general rule at common law and also to enlarge the right of search conferred by the Code, as well as to impose upon one who violates its provisions both a penal and a civil liability." [Emphasis supplied] This case is also authority for the principle that whether a search is an unreasonable one is a question for the jury under the facts and circumstances of the case.

Inasmuch as Instruction E did not properly state the law in this state with regard to the matter involved, the giving of such Instruction would constitute reversible error.

For the reasons stated herein, the judgment of the Circuit Court of McDowell County is reversed, the verdict of the jury set aside and the defendant is awarded a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *defendant awarded a new trial.*