Edward R. JACKSON, Plaintiff,

v.

CITY COUNCIL OF the CITY OF
CHARLOTTESVILLE,
VIRGINIA, Defendant.

Civ. A. 84–0040–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

April 6, 1987.

Robert P. Boyle, Robert H. Downer, Jr., Boyle & Bain, Charlottesville, Va., for plaintiff.

Roger C. Wiley, City Atty., Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This is an action brought by the owner of a billboard sign advertising business to have a city ordinance which regulates the content of billboard advertising declared unconstitutional under either federal or state due process and free speech guarantees. Alternatively, the plaintiff, Edward R. Jackson, seeks damages for the unauthorized taking of private property without just compensation. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (1982) and 28 U.S.C. § 1343 (1982). The plaintiff also seeks damages for a denial of his civil rights under 42 U.S.C. §§ 1983 and 1985 (1982), and a claim for attorney's fees pursuant to 42 U.S.C. § 1988 (1982).

The plaintiff is the sole proprietor of a business, Jackson Poster Advertising Systems, which erects billboard signs advertising various commercial and non-commercial messages throughout the City of Charlottesville, of which thirty such signs had messages which dealt with advertisement of activities, services, or functions off-site of the premises on which the signs were located. In 1975, the defendant City of Charlottesville enacted an ordinance which prohibited, in relevant part,

> [a]ny sign which advertises any activity, business, product or service which is not conducted, produced or sold on the premises where the sign is located.

Charlottesville City Code 31–182(e) (1976). In short, section 31–182(e) permits on-premises commercial advertising, but prohibits virtually all non-commercial communication and all off-premises commercial and non-commercial advertising.[1]

---

[1]. Of course, signs advertising non-commercial activities which are conducted on-premises are permitted under the language of § 31–182(e) itself. The court also notes that the sign ordinance does contain at least two provisions which might be interpreted to permit certain non-commercial advertising and off-premises commercial advertising. The first such provision permits, "informational signs" and "temporary or emergency signs." Charlottesville City Code § 31–183(f) (1976). The other provision permits "[t]emporary ... informational signs,"

The fact that the sign ordinance essentially permits only on-premises commercial advertising has placed plaintiff here in a uniquely unenviable position. Plaintiff is the sole proprietor of a business which leases outdoor sign spaces for advertising in the Charlottesville area. Apparently, plaintiff has available for lease sign spaces on both free-standing billboards and exterior building walls which plaintiff leases from the buildings' owners. Furthermore, plaintiff leases out his sign spaces for both commercial and non-commercial messages. However, since the sign ordinance prohibits virtually all off-premises commercial and non-commercial advertising, plaintiff's business has been severely handicapped.

The plaintiff had notice of the passage of the ordinance in 1975, and in fact lobbied vigorously against its adoption. However, the first official notice plaintiff had that any of his signs were not in compliance with the sign ordinance occurred on March 24, 1982. At that time the city's Zoning Inspector notified plaintiff by letter that the billboard then being installed at 616 W. Main Street in Charlottesville violated various provisions of the sign ordinance, including section 31–182(e). Although the letter directed that plaintiff immediately remove the billboard, plaintiff did not take any action concerning that sign. On May 17, 1984, plaintiff received another letter from the Zoning Inspector, this time with respect to plaintiff's sign at 204 6th Street, N.W. in Charlottesville. Following receipt of the second letter, plaintiff initiated the present complaint on June 14, 1984.[2]

In 1976 when the sign ordinance became effective, the plaintiff had thirty outdoor advertising signs in the City of Charlottesville. Seven of those signs were removed between 1976 and the filing of the complaint in 1984, and the plaintiff has lost an additional seven signs since the filing of the complaint. Of these fourteen signs, one had deteriorated beyond repair, one was removed when the property on which it was located was obtained by the Charlottesville Redevelopment and Housing Authority, and twelve were removed at the request of the respective property owners. None of these signs was lost or removed as a result of the enactment of the sign ordinance, so far as can be determined from the record, and all were for off-premises advertising. The plaintiff's existing signs were valid non-conforming uses which, under the City's zoning ordinances, could continue as long as they were not damaged in excess of fifty percent of their appraised value.

The plaintiff has also claimed that the ordinance had "chilling effect" on the market for his signs, thereby causing a reduction in their rental value. In 1975, the year before the ordinance became effective, the plaintiff's signs generated $10,650 in income. By 1985, income from the signs had increased to $16,600. The maximum rent received for a sign increased from $600 in 1975 to $1900 in 1985. The plaintiff also

and "[s]igns for temporary events ... erected not more than one month before the event or activity." *Id.* at § 31–183(g). Temporary signs permitted under section 31–183(g) must be removed within one week following the event's conclusion. *Id.*

While the term "temporary sign" as used in those two provisions could be read to include on-premises signs advertising non-commercial messages, and off-premises signs advertising commercial and non-commercial messages, even if those provisions permit such limited non-commercial and off-premises commercial advertising, clearly the general scheme of the sign ordinance is to prohibit all but on-premises commercial advertising.

2. Since commencement of this action, plaintiff has lost his lease for the wall space at 616 W. Main Street. Consequently, plaintiff's complaint as to that property has been rendered moot. Nevertheless, the complaint alleges that plaintiff has a number of other sign spaces within the city, all of which may be subject to the sign ordinance's prohibition against non-commercial and off-premises commercial advertising. Defendant asserts there is no justiciable controversy regarding plaintiff's other sign spaces because plaintiff has made no application to erect signs on those locations. However, the court agrees with plaintiff that it would be futile for him to pursue such applications, given the city's clear intention to enforce the sign ordinance. Therefore, while the portion of plaintiff's complaint concerning the 616 W. Main Street sign is moot, the remainder of plaintiff's complaint presents a justiciable controversy regarding the constitutionality of the sign ordinance.

alleges that since its enactment in 1976, the City sign ordinance has cost his business approximately $430,000. He bases that calculation on the fact that he has felt that it would be illegal to install new signs in additional locations. Evidence before the court also demonstrates that some property owners were reluctant to allow "illegal" signs on their property. Thus, the plaintiff has alleged that the ordinance had a "chilling effect" on his ability to solicit new business throughout the period of time in question.

This court has already denied the defendant's motion to dismiss the plaintiff's complaint. *See* Order, filed April 23, 1985. However, defendant has now moved for summary judgment, and has renewed and recast its arguments in light of discovery proceedings which have occurred, and has also filed a motion *in limine* seeking to exclude evidence of alleged lost revenues from commercial advertising. Throughout its various motions, the defendant has asserted three defenses—first, that the plaintiff's complaint did not state a viable first amendment claim, second, that the complaint is barred by the applicable statute of limitations, and third, that the plaintiff has not suffered any unconstitutional taking of his property. The defendant has also moved this court for an order *in limine* restricting the plaintiff's evidence on the issue of damages to those proximately resulting from the City's restrictions on noncommercial advertising, arguing that to the extent the ordinance unconstitutionally regulates noncommercial speech, it should be severed from the rest of the ordinance. Under this logic, any of plaintiff's damages caused by the constitutionally valid limitations on commercial advertising should be excluded. Both motions will be addressed herein.

*First Amendment*

As has been previously stated in its ruling on the defendant's motion to dismiss, the court believes there is no merit in defendant's argument that plaintiff has failed to state a viable first amendment claim. The sign ordinance at issue here suffers from many of the same weaknesses as the sign ordinance reviewed by the United States Supreme Court in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).[3] In particular, the ordinance evidences a preference, held impermissible in *Metromedia,* for on-premises commercial advertising over various forms of non-commercial speech. *Id.* at 512–13, 101 S.Ct. at 2894–95. Although this court, unlike the *Metromedia* court, does not yet have the benefit of a fully developed record, it is inescapable that the Charlottesville sign ordinance virtually prohibits non-commercial advertising and off-premises commercial advertising, while permitting on-premises commercial advertising. As such, the sign ordinance effectively affords greater protection to commercial speech than non-commercial speech, and thereby runs afoul of the plurality's analysis and ruling in *Metromedia.*[4]

Defendant asserts that *Metromedia* is inapposite here because the city's sign ordinance is content neutral. *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984). *Vincent* ruled that a municipality's sign ordinance absolutely prohibiting the posting of signs on public property does not violate the first amendment because such an absolute prohibition is content neutral. *Id.*

The court believes defendant's reliance on *Vincent* is misplaced because the sign ordinance at issue here is not the kind of absolute prohibition permitted by *Vincent.* On the contrary, as stated previously, the Charlottesville sign ordinance impermissibly favors on-premises commercial adver-

**3.** While the ordinance in *Metromedia* differs somewhat in form from the local ordinance challenged in this case, a careful analysis of the two ordinances shows that each reaches the same result, i.e., the virtual prohibition of non-commercial advertising and off-premises commercial advertising.

**4.** The court recognizes that *Metromedia* gives rise to dilemmas for urban planners. Nevertheless, the court concludes that the plurality opinion in *Metromedia* is the controlling authority in this case.

tising over all forms of non-commercial advertising and off-premises commercial advertising. Thus, the sign ordinance falls within the scope of the plurality opinion in *Metromedia,* and outside the scope of *Vincent.* Based on the plurality opinion in *Metromedia,* the court determines that plaintiff has stated a viable First Amendment claim in this case.

 Thus, following the reasoning of *Metromedia,* it is the decision of this court that Charlottesville City Code § 31–182(e) reaches too far into the realm of protected speech, and is unconstitutional on its face.

*Statute of Limitations*

Having held the Charlottesville City ordinance to be unconstitutional, it must then be decided whether the plaintiff may bring a claim under the fourteenth amendment. That issue in turn depends on whether the plaintiff's taking claim is barred by the applicable statute of limitations. The court agrees with the defendant that plaintiff's claim is subject to the Virginia statute of limitations for such actions, *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), and that the two-year personal injury statute of limitations, Va. Code § 8.01–243A (1984 & Supp. 1986), is applicable here. *See, e.g., Runyon v. McCrary,* 515 F.2d 1082 (4th Cir.1975), *aff'd,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *see also, Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

 While the time limitation itself is borrowed from state law, the federal rule fixes the time of accrual of a right of action. *Bireline v. Seagondollar,* 567 F.2d 260 (4th Cir.1977); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975). Generally, federal rule establishes as the time of accrual that time when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Bireline, supra* at 263; *Young v. Clinchfield R.R. Co.,* 288 F.2d 499, 503 (4th Cir.1961). Plaintiff has asserted, however, this his cause of action is not time barred since the enactment of the statute and continued enforcement thereof constitutes a continuing wrong which tolls the statute of limitations.

This line of argument is deceptively complex, as courts have determined that a plaintiff's cause of action accrues when he knows or has reason to know of the injury which forms the basis of his action, yet "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981), *cited with approval in Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982). A thorough review of the continuing wrong doctrine can be found in *Ocean Acres Ltd. v. Dare County Board of Health,* 707 F.2d 103 (4th Cir.1983). In *Ocean Acres,* the Dare County Sanitarian had issued a moratorium on the installation of septic tanks in a portion of land proposed to be developed by the plaintiff because of the proximity of the tract to a pond. With full knowledge of the moratorium and the possibility of challenging the ordinance, the plaintiff proceeded to develop its tract, installing a central sewage system in accordance with the moratorium. Seven years after the enactment of the moratorium, the plaintiff sued to recover the increased costs necessary to construct and maintain the central sewage system, which had been completed six years earlier, claiming "violations of the 'taking clause' and of due process guarantees of the fifth and fourteenth amendments." *Ocean Acres,* at 105. The court held the enactment of the moratorium did not constitute a continuing wrong sufficient to toll the statute of limitations.

Unfortunately, the reasoning in *Ocean Acres* may not be clearly applicable to this case because that court addressed the issue of when a cause of action based on *due process guarantees* accrues, and distinguished a case involving continuous injuries caused by the taking of properties without just compensation, *Gordon v. City of Warren,* 579 F.2d 386 (6th Cir.1978). *Ocean Acres, supra,* at 106. Following the logic of *Ocean Acres,* it appears that if the plaintiff complains of the "method" by which property is taken, and not the "taking" itself, then the statute of limitations commences to run on the date of the gov-

ernmental enactment becomes effective. Conversely, if the plaintiff complains of the "taking" of his property, and not the "method" by which it is taken, then a continuing wrong theory might apply. In this case, the plaintiff does not take issue with the method by which his property was taken. He does not allege any due process violations. Rather, the plaintiff complains of the continuous inability of his business to construct signs due to the proscriptions of the facially unconstitutional ordinance at issue here.

■ Although the "particular policies of the statute of limitations in question" must be considered, *Ocean Acres, supra,* at 107, it is the question of when the injuries which are the basis of this action accrued which must be the focus of this court's deliberations. In *Ocean Acres,* the plaintiff-partnership developed the properties without litigating the moratorium's validity. Similarly, Jackson could have challenged the sign ordinance at any time since its enactment, yet unlike the plaintiffs in *Ocean Acres,* he could also at any time have reversed his position and started erecting signs advertising off premises commercial and non-commercial business, and therefore have increased his revenues. Thus, while some of the policy arguments found in *Ocean Acres* are applicable herein, it is the decision of this court that the actions of the City and the resulting damages created a continuing tort which tolls the statute of limitations. Therefore, the plaintiff will be allowed to recover damages, if any, which have accrued within two years prior to the filing of the complaint.

*Fourteenth Amendment Taking Claim*

Although this court has previously ruled that the record before the court upon the defendant's motion to dismiss was not sufficiently developed to determine whether the sign ordinance denied the plaintiff "economically viable use" of his leasehold interest in his sign spaces, the court recognized that the plaintiff must shoulder a heavy burden in establishing a taking claim. *See* Order, filed April 23, 1985. This court is of the decision that the current record is much more complete and allows this court to decide, after careful review, that the plaintiff has indeed failed to meet this burden. The fifth amendment guarantees that private property shall not "be taken for public use, without just compensation." Of course, this guarantee is applied to the states through the fourteenth amendment. The seminal case in this area of law is *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). That case held that:

> The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, ... or denies an economically viable use of his land.... The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest.

*Id.* at 260, 100 S.Ct. at 2141 (footnotes omitted). In the *Agins* case, the Court held that a zoning regulation which limits development to five homes on five acres of property did not constitute a taking under the fifth and fourteenth amendments because the ordinances did not prevent some developmental use of appellants' land, nor extinguish a fundamental attribute of ownership. The state interests fostered by the sign ordinance can be found in Charlottesville City Code § 31.166, and are "to minimize safety hazards and to facilitate the creation of an attractive and harmonious community ..." These justifications have uniformly been upheld against constitutional attacks on sign ordinances. *Metromedia Inc. v. City of San Diego,* 453 U.S. 490, 510, 101 S.Ct. 2882, 2893, 69 L.Ed.2d 800 (1981); *Major Media of the Southeast, Inc. v. City of Raleigh,* 621 F.Supp. 1446, 1451 (E.D.N.C.1985), *aff'd,* 792 F.2d 1269 (4th Cir.1986). The plaintiff does not seriously contest the legitimacy of the City's interest in regulating billboard advertising. Rather, the plaintiff bases his argument on the fact that his ability to produce income from the billboards has been completely taken by the ordinance.

■ An ordinance which merely deprives the owner of the highest and best use of his property, or causes a diminution of its market value, does not constitute an unlawful taking. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124–25, 130–31, 98 S.Ct. 2646, 2659, 2662, 57 L.Ed.2d 631 (1978); *see e.g., Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (reduction in value of 87.5 percent held not to be a taking); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (75 percent diminution in value held not to be a taking). Furthermore, governmental regulation which prevents a company from expanding its market is not a deprivation of "property". In *PVM Redwood Co. v. United States,* 686 F.2d 1327 (9th Cir.1982), *cert. denied,* 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983), a sawmill operator claimed compensation because the United States had acquired 98 percent of its timber supply. In affirming the dismissal of the complaint for failure to state a claim, the Court reasoned:

> PVM has failed to distinguish between 'appropriation of property and the frustration of an enterprise by reason of the exercise of a superior governmental power.' *United States v. Grand River Dam Authority,* 363 U.S. 229, 236, 80 S.Ct. 1134, 1138, 4 L.Ed.2d 1186 (1960).... As the Supreme Court stated in *Grand River, supra,* 363 U.S. at 236, 80 S.Ct. at 1138:
>
> > Here respondent has done no more than prove that a prospective business opportunity was lost. More than that is necessary as *Omnia Co. v. United States,* 261 U.S. 502 [43 S.Ct. 437, 67 L.Ed. 773] [1923], holds. In that case the claimant stood to make large profits from a contract it had with a steel company. But the United States, pursuant to War Power, requisitioned the company's entire steel production. Suit was brought in the Court of Claims for just compensation. The Court, after pointing out that many laws and rulings of Government reduce the value of property held by individuals, noted that there the

Government did not appropriate what the claimant owned but only ended his opportunity to exploit a contract. 'Frustration and appropriation are essentially different things.' *Id.,* at 513 [43 S.Ct. at 439].

It is not clear from PVM's complaint that existing contracts had been frustrated. Rather it would seem that what had been frustrated was an expectancy based on past experience that contracts would be entered into. *Grand Rapids* applies *a fortiori.*

We conclude that PVM 'can prove no set of facts in support of [its] claim which would entitle [it] to relief.

686 F.2d at 1329.

■ In this case, the discovery of record demonstrates that the plaintiff has not suffered an unconstitutional taking of his property. The only damages claimed by the plaintiff are lost business opportunities and a reduction in the fair market value of his existing signs. The continued receipt of income from his signs, as discussed in the factual statements herein, indicates that the plaintiff has not, as a matter of law, been deprived of an economically viable use of his property.

*Severance of the Ordinance*

During the development of the record herein, none of the witnesses for the plaintiff have distinguished between losses from commercial and non-commercial advertising. Accordingly, the defendant has moved for an order *in limine* to exclude evidence regarding revenues lost from the City's constitutional restrictions on commercial advertising. Since this court has held the plaintiff's damages to be insufficient to support a claim for a taking of property without just compensation under the fifth and fourteenth amendments, the defendant's motion *in limine* is moot. Even so, the court will address the arguments regarding the severability of the ordinance at issue herein, as it applies to the defendant's motion for summary judgment.

Defendant argues that invalidation of the Charlottesville ordinance on overbreadth

grounds should not lead to the abrogation of an otherwise valid and rational legislative enactment. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *see also C.I.S.P.E.S. v. Federal Bureau of Investigation,* 770 F.2d 468 (5th Cir.1985). This reasoning is paralleled by the Charlottesville City Code itself which states, "If any part, section, subsection, sentence, clause or phrase of this Code is for any reason declared to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Code." Charlottesville City Code § 13 (1976). The effect of this section is "to reverse the presumption that the Legislature intended an act to be effected as an entirety and that it is inseparable. When there is such a savings clause the presumption is that the statute is separable and that the valid portion may stand even though a portion is invalid." *Wicks v. City of Charlottesville,* 215 Va. 274, 277, 208 S.E.2d 752 (1974).

■ Defendant argues that by removing four words, the ordinance can be rendered constitutional under the standards set forth in *Metromedia, supra.* As severed, section 31–182(e) of the ordinance would prohibit "any sign which advertises any business which is not conducted, produced or sold on the premises where the sign is located." As the plaintiff correctly points out, the ordinance as amended would be ambiguous as the word "business" is not defined. It would be difficult to classify certain businesses that could be construed as non-commercial, such as the the American Medical Association, the American Dental Association, the University of Virginia Athletic Department, the United States Postal Service, or trade unions. This could potentially cause the ordinance to be enforced on a case-by-case basis, which may not be in accordance with the intentions of the drafters, who originally enacted a comprehensive statute. This court is reluctant to rewrite the present ordinance on the strength of its general savings or severability clause, since it appears that such action would amount to legislation by the court. *See e.g. Hannabass v. Maryland Cas. Co.,* 169 Va. 559, 569, 194 S.E. 808, 812 (1938); *City of Martinsville v. County of Henry,* 204 Va. 757, 133 S.E.2d 287 (1963). This court agrees that "fault in a statute is not to be corrected by the court, as correction lies within the exclusive province of the law-making branch of the government." *Durham Bros. & Co. v. Woodson,* 155 Va. 93, 154 S.E. 485 (1930). Since the ordinance is unconstitutional on its face, it is the determination of this court that severance of the offending part by the court is not the proper course, so that the ordinance must be struck in its entirety.

*Denial of Civil Rights*

In reviewing the plaintiff's complaint, it appears that Jackson is also seeking damages for denial of his civil rights under 42 U.S.C. §§ 1983 and 1985 (1982), together with attorney's fees pursuant to 42 U.S.C. § 1988 (1982). However, the plaintiff has not presented any legal argument to the court why such relief should be awarded. This court does not see how the enactment of the ordinance at issue here constitutes a denial of the plaintiff's civil rights, and, in the absence of anything regarding this issue in the record other than the allegation of the complaint, the court finds that the deprivation of civil rights allegation is without foundation. For these reasons, the court will not consider the grant of an award of attorney's fees as well.

*Conclusions*

For the above stated reasons, it is the decision of this court that the plaintiff Edward R. Jackson states a viable first amendment cause of action, and that the ordinance at issue herein, Charlottesville City Code § 31–182(e) (1976) is unconstitutional on its face. This unconstitutional ordinance has caused a continuing injury to the plaintiff, causing the statute of limitations to be tolled and allowing the plaintiff to recover damages accruing over the two years prior to the filing of the complaint under the applicable statute of limitations, Va. Code § 8.01–243 A (1984 & Supp. 1986). However, the plaintiff has not demonstrated the requisite taking of property rights within the past two years; therefore, the

City is not liable in damages to the plaintiff.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

that:

1. Summary judgment shall be, and it hereby is, granted in favor of the plaintiff in part, and defendant, its agents, employees and persons acting in concert with it, shall be, and they hereby are, enjoined from enforcing or attempting to enforce in any manner the take-down provisions and penalty provisions contained in the zoning ordinance found in Charlottesville City Code § 31–182(e) (1976).

2. Summary judgment shall be, and it hereby is, granted in part in favor of the defendant, in that there has been no unconstitutional taking of the plaintiff's property and therefore the defendant is not liable in damages to the plaintiff.

3. The court finds the plaintiff's allegations of denial of civil rights and request for damages and attorney's fees in the complaint to be without foundation, and therefore grants summary judgment in favor of the defendant on these issues.

4. This action shall be, and it hereby is, dismissed with prejudice and stricken from the docket of this court.

The clerk is hereby directed to send a certified copy of this Order, and the accompanying Memorandum Opinion, to all counsel of record.